**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

_____
                                          )
PAPAYA GAMING, LTD.,                      )
                                          )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )          Case No. _____
                                          )
FAIR PLAY FOR MOBILE GAMES,               )
JOSH LEVIN,                               )
SQUARE STRATEGIES LLC,                    )
LACIE NEWTON,                             )
ASSEMBLE THE AGENCY LLC,                  )
                                          )
                                          )
        Defendants.                       )
_____)

## COMPLAINT

Plaintiff Papaya Gaming, Ltd. ("Papaya"), by and through its undersigned counsel, brings this action against Fair Play for Mobile Games ("4 Fair Play"), Josh Levin, Square Strategies LLC ("Square Strategies"), Lacie Newton, and Assemble the Agency LLC ("Assemble") (collectively "Defendants"), seeking relief for injuries caused by Defendants' tortious and unlawful acts.

### INTRODUCTION

1.     Papaya is an industry-leading developer of mobile games.  Since 2019, Papaya's games have offered customers the opportunity to earn rewards, including cash prizes, through their skill at gameplay.  Papaya provides skill-based games to allow players to compete against each other in an environment where ability, not luck or chance, determines the victor.

2.     Defendants, in league with a competitor mobile gaming company, Skillz Platform Inc. ("Skillz"), embarked on a fraudulent crusade to smear Papaya and other mobile gaming

companies while positioning Skillz as the only company that can be trusted to provide players with a fair mobile gaming experience.

3.    Defendants carried out this deceptive scheme in several ways, including by (a) soliciting, manipulating, and fabricating customer "complaints" about Papaya's and other mobile gaming companies' alleged bot use via 4fairplay.org (the "4FairPlay Website"); (b) seeking to provoke investigations of Skillz's competitors by disseminating these false or misleading complaints to state and federal officials; and (c) presenting false data on the 4FairPlay Website to deliberately mislead consumers regarding the existence and magnitude of supposed bot-related complaints against Papaya and other mobile gaming companies.

4.    In particular, Defendants instituted an online campaign to convince mobile gaming customers to submit complaints about three mobile gaming companies—including Papaya and excluding Skillz—through the 4FairPlay Website, ostensibly for direct submission to state attorneys general, to directly and surreptitiously target Papaya.

5.    But when viewers visited and submitted complaints through the 4FairPlay Website, the 4FairPlay Website failed to inform them that their personal identifying information and complaints would be shared with Skillz and its agents for purely competitive purposes.

6.     Most importantly, Defendants deliberately concealed from viewers submitting complaints through the 4FairPlay Website that they had manipulated the submission process and, upon information and belief, systematically altered and fabricated the contents of the complaints themselves to damage Papaya's reputation and business relationships.

7.    Upon information and belief, after altering the complaints, Defendants then submitted these false and misleading complaints to government officials to further Skillz's competitive agenda.

8.    The 4FairPlay Website itself was replete with false representations designed to strike at Papaya's reputation and ruin Papaya's standing among mobile gaming customers under the guise of an independent advocacy organization.

9.    Everything about the 4FairPlay Website was consciously designed by Defendants to provide a false sense of legitimacy and impartiality to the fraudulent website.

10.    Among other fraudulent activity, the 4FairPlay Website featured, upon information and belief, fake customer testimonials and statistics based on the fabricated customer complaints to create the illusion of widespread customer discontent with Papaya about alleged bot usage, and to induce 4FairPlay Website visitors to submit complaints about Papaya that were then sent to state attorneys general.

11.    The 4FairPlay Website's home page also displayed a fake tracker, or counter, that purported to show the volume of complaints about Papaya and other mobile gaming companies (except Skillz) that customers had submitted to law enforcement agencies.

12.    The counter initially presented a very specific and non-round number (12,594), and the counter continued to increase in number as a visitor stayed on the page, at a pace of one additional complaint every three seconds.  When read in conjunction with other fake data posted on the 4FairPlay Website, the counter falsely indicated that consumers were submitting eight complaints about Papaya every minute around the clock.

13.    The false presentation of the increasing number of complaints was followed by the phrase "and Counting!" to further indicate to consumers visiting the 4FairPlay Website that the counter was tied to an active database of customer complaints.

14.    But the counter was not tied to an active database of complaints.  By displaying the same inaccurate number each time a visitor opened the 4FairPlay Website, and showing the number

continually increasing at the same rate while the visitor stayed on the page, the counter unambiguously and falsely represented that the website received a score of new complaints each minute.

15.     Defendants published the fake counter to deliberatively deceive viewers of the 4FairPlay Website with content that they knew was likely to, and did, mislead viewers about the number of complaints about alleged bot use submitted through the 4FairPlay Website.

16.     Finally, upon information and belief, the 4FairPlay Website displayed other fake content, including, as referenced above, false customer testimonials, a pie chart that purported to convey the percentages of complaints submitted per game—with Papaya's games supposedly the subject of a plurality of all complaints—and a supposed map of "Complaints by [U.S.] state."

17.     Doubtless recognizing the legal exposure, Defendants deliberately obscured Skillz's and their connection to the 4FairPlay Website.

18.     Levin—an individual with a history of incorporating entities in the Commonwealth of Virginia on behalf of unnamed parties—created 4 Fair Play, a front company that served as the public sponsor of the 4FairPlay Website.

19.     Levin then served as Director of 4 Fair Play and hired his firm, Square Strategies, to perform consulting work for the entity, including establishing email service, using web engine hosting, and facilitating Google advertisements.

20.     Upon information and belief, Assemble, a political strategy firm, and Newton, a communications strategist at Assemble who has a similar history of running public perception campaigns on behalf of anonymous parties, developed the public communications strategy and facilitated the complaint submission process, among other things.

21.     Defendants Levin and Newton, with the support of their respective firms Square Strategies and Assemble, thus orchestrated and executed a smear campaign against Papaya.

22.     All along, Defendants' objective, upon information and belief, was to use illicit means to allow Skillz to gain an unfair competitive advantage over Papaya and improve Skillz's dire financial condition.  Skillz has been unable to keep pace with Papaya's player-friendly games and stands on the cusp of financial ruin; Skillz's fiscal condition is deteriorating, and its leadership faces significant exposure from a shareholder lawsuit.

23.     Defendants' creation, operation, and control of the fraudulent 4FairPlay Website, as well as their knowing dissemination of fabricated customer complaints to government officials and the public, caused substantial and ongoing harm to Papaya.

24.     The 4FairPlay Website's false statements, backed up by fabricated or misleading data, suggested to the public that Papaya was a bad actor bent on scamming innocent customers for economic profit.  The resulting damage to Papaya's reputation, goodwill, and revenue has been significant.   Papaya also has incurred legal fees related to the 4FairPlay Website's false representations and the dissemination of complaints to third parties.  Papaya brings this Complaint to recoup its losses.

## PARTIES

25.     Plaintiff Papaya Gaming, Ltd. is a mobile gaming company incorporated and with its principal place of business in Israel.  Its registered office is located at HaMasger Street 35, Tel Aviv-Yafo, 6721407, Israel.

26.     Defendant Fair Play for Mobile Games is a 501(c)(4) corporation created to spearhead the campaign against Skillz's competitors. The entity was incorporated in Virginia on August 8, 2023 and dissolved on March 1, 2024.  On August 23, 2023, Fair Play for Mobile Games

registered the fictious name "4 Fair Play."  The corporation's registered address is 1501 Wilson Boulevard, Suite 1050, Arlington, VA 22209.

27.     Defendant Josh Levin is a consultant who facilitated the creation, operation, and maintenance of 4 Fair Play and the 4FairPlay Website.  Levin was the Director of 4 Fair Play and is the current or former director of other entities in the Commonwealth.  Levin, through his company Square Strategies, also contracted to provide consulting services for 4 Fair Play.  Levin is domiciled in Illinois.

28.     Defendant Square Strategies LLC is a consulting firm, hired by 4 Fair Play, to perform a variety of services related to the 4FairPlay Website.  Square Strategies is incorporated in Illinois with its principal place of business located at 2741 W. Logan Boulevard, Chicago, Illinois, 60647.

29.     Defendant Assemble the Agency LLC is a political strategy firm, hired by 4 Fair Play, to perform a variety of services related to the 4 Fair Play campaign and website. Assemble is incorporated in Delaware, with its principal place of business located at 310 E 46th Street #4E, New York, New York 10017.

30.     Defendant Lacie Newton is a communications strategist at Assemble, hired by 4 Fair Play, to consult on the 4 Fair Play campaign and website.  Newton is domiciled in New York.

### JURISDICTION AND VENUE

31.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332.

32.     This Court has personal jurisdiction over Defendants pursuant to Va. Code Ann. § 8.01-328.1 because Defendants transacted business in the Commonwealth, contracted to supply services in the Commonwealth, caused tortious injury by an act or omission in the Commonwealth,

and participated in a conspiracy in which co-conspirators' activities in furtherance of the conspiracy within the Commonwealth are imputed to each co-conspirator.

33.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

## I.    Skillz's Business and Financial Condition Are Deteriorating

34.    Skillz is in the midst of a financial downturn that has lasted for over three years.[1]

35.    Skillz's earnings reports have demonstrated a persistent drop in Skillz's year-over-year revenue.

36.    Skillz's revenue totaled $44.4 million in the first quarter of 2023,[2] but fell to only $25.2 million in the first quarter of 2024.[3]

37.    Skillz's second quarter sales in 2024 fell 37% compared to 2023.[4]

38.    Skillz again missed revenue estimates in the third and fourth quarters of 2024, with revenue down 32.6% year-over-year in Q3 and 35% year-over-year in Q4.[5]

---

[1]    StockStory, *Skillz (NYSE: SKLZ) Misses Q1 Sales Targets*, Globe and Mail (May 9, 2024), https://www.theglobeandmail.com/investing/markets/indices/TXCX/pressreleases/26100097/skillz-nysesklz-misses-q1-sales-targets/.

[2]    *Skillz Announces First Quarter 2023 Results*, Skillz (May 9, 2023), https://investors.skillz.com/news/news-details/2023/Skillz-Announces-First-Quarter-2023-Results/.

[3]    *Skillz Announces First Quarter 2024 Results*, Skillz (May 9, 2024), https://investors.skillz.com/news/news-details/2024/Skillz-Announces-First-Quarter-2024-Results/.

[4]    *Skillz Inc. Reports Earnings Results for the Second Quarter and Six Months Ended June 30, 2024* (Aug. 1, 2024), https://www.marketscreener.com/quote/stock/SKILLZ-INC-105997961/news/Skillz-Inc-Reports-Earnings-Results-for-the-Second-Quarter-and-Six-Months-Ended-June-30-2024-47540462/.

[5]    *Skillz Misses Q3 Revenue Estimates*, The Motley Fool (Feb. 26, 2025), https://www.fool.com/data-news/2024/11/07/skillz-misses-q3-revenue-estimates/#:~:text=Revenue%20for%20Q3%202024%20fell,than%20the%20expected%20%2D%241.1126; *Earnings Call Transcript: Skillz Q4 2024 Sees Revenue Drop, Stock Dips*, Investing.com (Mar. 13, 2025), https://www.investing.com/news/transcripts/earnings-call-transcript-skillz-q4-2024-sees-revenue-drop-stock-dips-93CH-3928260.

39.     Skillz has lost nearly half of the average monthly paying users active on its platform in the same time span.

40.     In July 2024, Moody's Investor withdrew all credit ratings of Skillz, affecting $130 million in outstanding debt.[6]

41.     Skillz and/or its senior executives also face significant exposure from, among other legal issues, a shareholder derivative action filed in Delaware state court:  *Hanna v. Paradise*, No. 2024-0228 (Del. Ch. filed Mar. 8, 2024).

## II.    Defendants, at Skillz's Behest, Attack Papaya's Reputation and Manipulate Law Enforcement

42.     Rather than address its serious corporate, financial, and operational issues head-on or seek to improve its own product, Skillz has resorted to misguided, underhanded, and unlawful tactics to try to save its failing operations.

43.     Those tactics include a multi-faceted campaign of deception and fraud intended to position Skillz's mobile gaming platform as uniquely free from reproach, and inherently more "fair" and trustworthy than those of other mobile gaming companies like Papaya.

44.     Defendants played an integral role in this campaign by manipulating and fabricating "complaints" about Papaya and other mobile gaming companies' alleged bot use; disseminating these false and misleading complaints to law enforcement in Virginia and elsewhere; and presenting fabricated data regarding the complaints to deliberately mislead consumers into believing that Papaya faced thousands of bot-related complaints.

---

[6]    *Moody's    Ratings    withdraws    Skillz's    ratings*,    Moody's    Investor    (July    1,    2024), https://ratings.moodys.com/ratings-news/424237.

45.     From approximately September 2023 through at least late February 2024, the 4FairPlay Website was active, displayed content to the public, and provided for the submission of customer complaints about certain mobile games.[7]

46.     The 4FairPlay Website included at least three sub-pages, including:  (a) a home page purporting to display data related to the submission of customer complaints to state law enforcement agencies and encouraging visitors to file a complaint; (b) a "File a Complaint" page urging visitors to use a pre-populated form to submit a complaint against three companies, including Papaya, to a state law enforcement agency; and (c) a Frequently Asked Questions ("FAQs") page providing information about submitting a complaint to state law enforcement agencies and lauding companies that supposedly provide fair gaming experiences.

47.     Referring specifically to "fraudulent games" from mobile gaming operators Papaya, Avia Games, and Acerena—but *not* Skillz—the 4FairPlay Website implored visitors to "Act now" and "Fight back against scam games" to prevent operators from "steal[ing] your money and get[ting] away with it."

---

**Which companies are behind these fraudulent games?**                                          ⌄

Papaya Gaming owns and operates Solitaire Cash, Bubble Cash, and Bingo Cash – as well as dozens of other mobile "cash"
app games. Avia Games owns and operates Solitaire Clash, Bingo Clash and Bingo Tour as well as other similar games.
Acerena Inc. owns and operates Solitaire King, Bingo King and Battle Bingo.

---

[7]    Although the 4FairPlay Website is no longer accessible, its contents were archived on several dates throughout its lifespan.  This Complaint describes the contents of the 4FairPlay Website as they existed on February 28, 2024.  Based on a review of the 4FairPlay Website as archived, the contents of the 4FairPlay Website were substantially similar from the date of the first archive (November 7, 2023) through the remainder of its existence.  Screenshots of the contents of the February 28, 2024 archive are attached as Ex. 1.



48.    Visitors were invited to submit complaints to the attorney general in their state of

residence.  They were told that they "may be entitled to compensation."

## File a complaint. It only takes a minute.

If you've lost money playing against bots, you're not alone—and you may be entitled to compensation. It's time
you got your hard-earned money back by bringing those companies to justice.
File a complaint today.

By clicking 'submit', an email will auto-populate with your information so you can directly share your complaint with your local attorney general.
This is the most effective way of bringing these gaming companies to justice and receiving compensation.

49.    The 4FairPlay Website further promised that "[w]ith enough claims, the state

attorney general will investigate the scam companies," and that "[a] successful investigation could

force the companies to pay consumers for damages."



50.     Defendants, at the suggestion of a Skillz official named "Andrew," designed the 4FairPlay Website "to feel more legal firm" to lend credibility to the complaint submission process and the statements made on the website.[8]  Upon information and belief, "Andrew" was Skillz's CEO and founder, Andrew Paradise.



---

[8]  *See* Ex. 2 (Figma Screenshot).

51. To target only Skillz's chief competitors (not Skillz), generate as many complaints as possible, and route complaints to state attorneys general, the 4FairPlay Website auto-populated the complaint forms.

52. The auto-populated forms listed only games developed by Papaya, AviaGames, or Acerena.



53. The auto-populated forms did not list games developed or hosted by Skillz.

54. A visitor who sought to submit a complaint about a game developed or hosted by another company (such as Skillz) was not presented with any option to do so.

55. Defendants took additional steps to ensure that the 4FairPlay Website would not impugn games on Skillz's platform.

56.     For example, one of the 4FairPlay Website's FAQs indicated that not "all" mobile cash-entry games are a "scam," preserving the possibility that Skillz—the company conspicuously absent from the 4FairPlay Website—is not "taking advantage of players by withholding money and creating unfair playing environments."



57.     If a visitor to the 4FairPlay Website sought to complain about one of the games listed in the auto-populated complaint form, they provided their personal identifying information, identified the specific pre-selected games about which they wished to complain, and indicated how much money they had spent playing the mobile games.   Customers were then provided the opportunity to describe their complaint in their own words.

58.     The Website claimed that "[t]housands of players are filing complaints against mobile games who use bots to deceive them out of their hard-earned money."



59.     But a spreadsheet of around 12,000 purported complaints provided by website developer Adam Shen shows that a tiny proportion included free-form comments at all, only a few of those free-form comments mentioned bots, and some free-form comments even complained about Skillz.

60.     For example, one player stated, "I have lost winnings on every game I downloaded. Too many games to send in a message. Skillz don't honor any winnings that individuals win. So I wonder who's actually getting the winnings."[9]

61.     Another player simply wrote, "Enjoy."[10]

62.     Upon information and belief, the 4FairPlay Website's statement that "[t]housands of players are filing complaints against mobile games who use bots to deceive them out of their hard-earned money," was premised on the complaints contained within this spreadsheet. Because the vast majority of submissions in the spreadsheet did not mention bots, it follows that Defendants deceived visitors of the 4FairPlay Website by falsely stating that around 12,000 complaint submissions complained of alleged bot use in mobile games.

---

[9]     Ex. 3 (Excel titled "Complaints data thru Oct 31 for web table" – "Working data" Tab – Row 2).

[10]    Ex. 3 (Excel titled "Complaints data thru Oct 31 for web table" – "Working data" Tab – Row 13).

63.     Upon information and belief, Defendants altered the contents of the customers' complaint submissions to align with the statements on the website before sending the complaints to law enforcement and without telling complainants that they would modify their complaints in any way.

64.     Upon information and belief, after altering the complaints, Defendants turned over the fabricated and misleading complaints to state and federal law enforcement, including the attorney general in Virginia.

65.     Upon information and belief, state and federal government officials thus received thousands of complaints ostensibly accusing Papaya of using bots in its games.  Upon information and belief, at least some of those complaints were fabricated.  All of the complaints were the product of an intentionally skewed solicitation and transmission process that Defendants designed to leave government officials with the impression that thousands of customers wanted the government to take action against Papaya.

66.     Upon information and belief, Defendants did not disclose to government officials the ways in which they manipulated the complaint submission process and complaints to ensure a critical mass of ostensible complaints alleging bot use in Papaya's games.

III.    **The 4FairPlay Website Featured Fabricated Testimonials and Data Intended to Harm Papaya**

67.     Defendants used the 4FairPlay Website as the hub of their campaign to collect, fabricate, and disseminate complaints and associated data to government officials and the public at large.

68.     From its inception, when it bore the working title "Fight Fraud For Papaya Games," the 4FairPlay Website targeted Papaya.

69.    As explained below, the 4FairPlay Website, upon information and belief, posted fake testimonials and false data to harm Papaya and boost Skillz's competitive standing.

70.    ***First***, upon information and belief, the home page and File a Complaint page featured at least some phony customer testimonials in which fake customers complained about Papaya's games.





71.    The testimonials do not match free-form comments included in the spreadsheet of purported complaints.

72.    Upon information and belief, some or all of these testimonials were not genuine statements made by real customers; they were fabricated and entirely contrived by Defendants.

73.    The website unambiguously presented the testimonials as real complaints in the words of real individuals.

74.    Defendants, upon information and belief, posted the fake customer testimonials to intentionally mislead viewers of the 4FairPlay Website to believe that real customers submitted complaints about alleged bot use in Papaya games to 4 Fair Play.

75.    Defendants intentionally paired the fabricated customer testimonials with the fake counter on the 4FairPlay Website, described further below, to cause viewers of the website to believe that a massive number of customers submitted complaints about Papaya that were similar in content to the testimonials featured on the website.

76.    ***Second***, the home page displayed a banner with an increasing tracker, or counter, purporting to show the number of complaints allegedly submitted to state law enforcement agencies about Papaya and two other mobile gaming companies.  Accompanying text stated that "[t]housands of players are filing complaints against mobile games who use bots to deceive them out of their hard-earned money," followed by a button that visitors could click to "File A Complaint."



77. The counter was a deliberate fabrication. It did not reflect an actual number of complaints filed against mobile games or mobile gaming operators.

78. Each time a visitor navigated to the 4FairPlay Website, no matter the date or time, the counter presented the same fixed, specific number at the outset: 12,594 ("and Counting!").

79. The counter was literally false.

80. The counter unambiguously represented that exactly 12,594 complaints had been submitted as of the time of the opening of the webpage. That number was false.

81. The counter unambiguously represented that the number of complaints continued to increase at a rate of one every three seconds (between the combination of the phrase "and Counting!" and the addition of one complaint to the counter every three seconds). That representation was false. Complaints were not submitted at a metronomic rate of one every three seconds.

82. The counter unambiguously represented that it was connected to a live database (between the combination of the phrase "and Counting!" and the addition of one complaint to the counter every three seconds). That representation was false. The counter was not tied to an active database.

83. The 4FairPlay Website represented that approximately eight new complaints against Papaya were being submitted every minute, around the clock. (The counter represented that twenty new complaints were submitted each minute, and the pie chart, described below, represented that over 40% of the total complaints were submitted against Papaya.) That representation was literally false. The website was not receiving at least eight complaints about Papaya each minute.

84.     The source code of the 4FairPlay Website shows that the initial complaint figure and the rate of the increase were chosen by Defendants.

85.     Skillz identified and publicized the 12,000 figure long before the website launched and complaints supposedly were collected.

86.     A Skillz official drafted, or at minimum contributed to and helped place for publication, a March 2023 article about bot use by mobile gaming companies.  The March 2023 article reported that "[p]resently, over 12,000 folks have filed a grievance towards cellular video games over being deceived by AI bots, with on-line gamer safety platform 4 Honest Play."[11]

87.     There does not appear to be a website or other platform named "4 Honest Play," and, upon information and belief, the "over 12,000" figure was made up.

88.     Skillz has conceded that the specific number and rate of increase of the counter did not reflect actual data.[12]

89.     The 4FairPlay Website itself provided no indication that the counter did not reflect actual data.

90.     Reasonable consumers visiting the 4FairPlay Website thus would have been deceived into believing that the reason the counter was increasing during their visit to the website was that actual complaints were being submitted in real time by other visitors.

91.     That was the purpose of the counter: to deliberately deceive viewers of the 4FairPlay Website to believe that customers were filing thousands of complaints against Papaya.

---

[11]    Gaming News, *This Gaming Firm Takes an Anti-AI Stance in Newest Advert*, AIWorkTime (Mar. 12, 2023), https://web.archive.org/web/20240701203701/https://www.aiworktime.com/2023/03/12/this-gaming-firm-takes-an-anti-ai-stance-in-newest-advert/.

[12]    Ex. 4 (Skillz Motion to Dismiss at 16, *Skillz Platform Inc. v. Papaya Gaming, Ltd., et al.*, No. 24-cv-01646 (S.D.N.Y. October 11, 2024), ECF No. 76.

92.     The 4FairPlay Website's use of a fictitious counter purporting to show the complaints filed by users in real time is a paradigmatic example of an online deceptive and unfair practice termed by the Federal Trade Commission as a "False Activity Message"—that is, "[m]aking false claims about others' activity on a site or interest in a product; Example: '24 other people are viewing this.'"[13]

93.     *Third*, the home page of the 4FairPlay Website featured a pie chart and map purporting to show the proportion of complaints submitted by game and state, respectively.

94.     A note accompanying the pie chart stated that "Bingo Cash and Solitaire Cash by Papaya Games have received the highest complaints so far followed by Solitaire Clash from Avia Games."

---

[13]    *See Bringing Dark Patterns to Light*, Federal Trade Commission Staff Report (Sept. 2022), at 21 (https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf).



95.     Papaya developed three of the games on the pie chart, listed as representing a total of 40.2% of all complaints, with the remaining games developed by Acerena and AviaGames.

96.     Like the counter, however, the pie chart was literally false.

97.     The pie chart unambiguously represented that 40.2% of all complaints submitted through the 4FairPlay Website complained about Papaya games.  Upon information and belief, that representation was false because 40.2% of all complaints submitted through the website did not concern Papaya games.

98.     The pie chart unambiguously represented that it was connected to a live database when it was introduced by the statement: "Bingo Cash and Solitaire Cash by Papaya Games have received the highest complaints so far."  The statement indicates that the pie chart represented a

current tally of complaints submitted through the 4FairPlay Website and would be updated over time as it was connected to an active database of complaint submissions.

99.     But Defendants' representation that the pie chart was tied to a live database was false and made, upon information and belief, with the deliberate intention of misleading visitors to the website.

100.    The pie chart was not tied to any live database.

101.    The figures in the pie chart remained static throughout the 4FairPlay Website's existence and were not linked to any live database.

102.    Thus, as Defendants intended, a reasonable consumer would have been deliberately deceived into believing that 40.2% of all complaints submitted through the 4FairPlay Website complained about Papaya games.

103.    The map featured on the home page was also literally false.

104.    Accompanying the map was a statement that "[s]cam mobile games are affecting players from across the country with California and New York receiving the most complaint submissions."



105.    Like the counter and pie chart, the map unambiguously represented that it was connected to a live database when it was introduced by the statement: "Scam mobile games are affecting players from across the country with California and New York receiving the most complaint submissions."  The statement indicates that the map represented a current categorization of complaints submitted through the 4FairPlay Website, including approximately 100–200 complaints submitted by Virginia residents.

106.    But the representation that the map was tied to a live database was false and, upon information and belief, intended to deliberately mislead viewers.

107.    The composition of the map remained static throughout the 4FairPlay Website's existence and was not linked to any live database.

108.    Further, featuring the pie chart and map on the home page of the 4FairPlay Website below the banner reading, "[t]housands of players are filing complaints against mobile games who

use bots to deceive them out of their hard-earned money," unambiguously represented to viewers of the website that 40.2% of thousands of complaints submitted across the country complained about Papaya's alleged bot use.  This representation was false.

109.    As explained above, Defendants, upon information and belief, deceptively altered complaints submitted through the 4FairPlay Website.  Thus, even if the counter, pie chart, and map could be interpreted to reflect data from complaints outside of a live database, the data incorporated complaints that were fabricated or misleading.

110.    Presentation on the 4FairPlay Website of the counter, pie chart, and map representing the database of fabricated complaints deliberately deceived viewers of the website into believing that thousands of complaints had been submitted about Papaya's alleged bot use.

111.    A reasonable consumer visiting the 4FairPlay Website would have been deceived into believing that thousands of complaints around the country had been submitted about Papaya's alleged bot use.

112.    Defendants, upon information and belief, deliberately misled viewers of the 4FairPlay Website and communicated to viewers that thousands of customers around the country had submitted complaints about Papaya's alleged bot use to tarnish Papaya's reputation, harm its goodwill, and prevent consumers from playing Papaya games to Skillz's competitive advantage.

IV.    **Defendants Obscure 4 Fair Play's Structure and Activities**

113.    Defendants and Skillz went to great lengths to cover their tracks while soliciting, manipulating, and disseminating to law enforcement false and misleading customer complaints about Papaya via the 4FairPlay Website, presumably because 4 Fair Play's activities opened them up to significant legal exposure.

114.    Papaya was able to definitively link Defendants and Skillz to the 4FairPlay Website in July 2024 only after filing a complaint in Virginia state court against the then-unknown John

Doe defendants that created, operated, and controlled the 4FairPlay Website; issuing ten third-party subpoenas; navigating repeated attempts by subpoena recipients to avoid producing documents; and moving to compel compliance with one of the subpoenas in Nevada state court.

115.    The operator of the 4FairPlay Website was identified on the website as 4 Fair Play, the fictitious alternative name of a Virginia corporation called "Fair Play for Mobile Games."

116.    The "About" page on the 4FairPlay Website stated that "4 Fair Play is on a mission to bring fairness to mobile gaming.  We are dedicated to promoting fair, transparent policies and practices in the industry so everyone can enjoy playing.  Our organization was founded to educate the public on fair play and provide tools and resources players need to protect themselves if they've been scammed."



117.    But neither 4 Fair Play nor Defendants Levin, Square Strategies, Newton, or Assemble was an organization "on a mission to bring fairness to mobile gaming."  Rather, Defendants were on a mission to manufacture complaints about Papaya and other mobile gaming companies to allow Skillz to unfairly compete with those companies.

118.    Defendants and Skillz were careful to cover their tracks.  Indeed, as confirmed by former Skillz personnel, Skillz leadership specifically instructed personnel not to take written notes about the 4FairPlay Website when it was discussed at meetings.

119.    By design, the 4FairPlay Website concealed any information that could connect Defendants or lead back to Skillz.

120.    Adam Shen, the designer of the 4FairPlay Website whom Papaya identified by analyzing website code, deleted several default web pages that would have provided information regarding its design.

121.    The 4FairPlay Website similarly had no easily attributable identifiers, and all of the graphics on the Website, aside from the logo, were stock images.

122.    Defendants and Skillz anonymously obtained the 4FairPlay Website's domain from registrar Tucows Inc. ("Tucows") and facilitated the transfer of the domain from Tucows to Levin, which Papaya uncovered by issuing a third-party subpoena to Tucows in May 2024.

123.    Levin then created a short-lived front company in Virginia, Fair Play for Mobile Games (later renamed 4 Fair Play), to function as the public-facing sponsor of the 4FairPlay Website and the complaint solicitation, manipulation, and dissemination campaign.

124.    Levin served as Executive Director of Fair Play for Mobile Games.[14]

125.    As Executive Director, Levin then retained The Gober Group on August 7, 2023,[15] which helped Levin register the fictitious alternative name "4 Fair Play" on August 23, 2023.[16]

---

[14]    Ex. 5 (Fair Play for Mobile Games, Articles of Incorporation).

[15]    Ex. 6 (The Gober Group Acknowledgment of Terms of Service and Fee Schedule).

[16]    Ex. 7 (Fictitious Name Certificate).

126.    As noted above, a disclaimer at the bottom of the 4FairPlay Website stated that it was "Paid for by 4 Fair Play."

127.    Levin and The Gober Group are frequent collaborators and have used this same playbook—leveraging corporate formalities to shield the identities of persons who wish to anonymously promote their agendas—on multiple occasions.

128.    For example, Levin linked with The Gober Group to incorporate Advancing Community Values, a Virginia entity that names Levin as director and used the same principal office address as 4 Fair Play.[17]  Advancing Community Values also created a website that encouraged visitors to sign a petition in support of the corporation's mission to "stop and reconsider the EPA's proposed PFAS water regulations."[18]  As with the 4FairPlay Website, the Advancing Community Values' website hides behind the faceless corporate entity and gives no information related to the identities of the persons who control that corporation.

129.    Levin and The Gober Group worked together to create another entity called Mobile Gaming Fairness in Virginia.  Levin served as the principal officer of Mobile Gaming Fairness with The Gober Group filing the relevant paperwork for 501(c)(4) status.[19]

130.    Mobile Gaming Fairness's mailing address links it to VA Sports Betting Alliance, which in turn lists a Gober Group email address as its principal contact.[20]

---

[17]    Ex. 8 (Advancing Community Values, Articles of Incorporation).

[18]    *Tell Washington to stop the EPA's Water Tax,* Advancing Community Values, https://web.archive.org/web/20240722030053/https://www.advancingcommunityvalues.org/ (last visited Mar. 5, 2025).

[19]    Exs. 9 (Mobile Gaming Fairness, Articles of Termination); 10 (July 19, 2022 IRS Letter for Mobile Gaming Fairness); Karen Blackistone, LinkedIn, https://www.linkedin.com/in/karenblackistoneoaks/ (last visited Mar. 12, 2025) (Karen Blackistone formerly worked as a partner at The Gober Group).

[20]    *See* Va Sports Betting Alliance, Virginia Public Access Project, https://www.vpap.org/lobbying/client/437576-va-sports-betting-alliance/ (last visited Mar. 7, 2024).

131.    The mailing address for Mobile Gaming Fairness, a UPS post office box, is also associated with at least forty-two other nonprofits.

132.    After creating entities to shield the identities of donors, Levin and The Gober Group typically engage a political strategy firm to carry out their goals to influence the public.   In particular, Levin and The Gober Group appear to work frequently with Assemble.

133.    Upon information and belief, 4 Fair Play retained Assemble and Newton to orchestrate Skillz's campaign to smear Papaya and assist with lobbying activities.[21]

134.    Newton has worked for Assemble since 2020 and has a similar track record of creating front entities to fund anonymous lobbying activity.   For example, Newton was the president of Citizens for a Fair Economy, a Virginia entity that The Gober Group helped incorporate.[22]   Citizens for a Fair Economy is one of the forty-two nonprofits that share a mailing address with Mobile Gaming Fairness.

135.    Newton was involved in various aspects of 4 Fair Play's campaign against Papaya, including developing strategy for both public-facing media about the campaign and the internal complaint submission process.[23]

---

[21]    Exs. 11 (California Lobbying Record) (showing payments to Assemble from 4 Fair Play); 12 (Draft Op-Ed) (showing feedback provided by Newton); 13 (Email from thanks@fairplay.org regarding complaint signed by "Lacie @ 4FairPlay").

[22]    Exs. 14 (Citizens for a Fair Economy, Annual Report); 15 (Citizens for a Fair Economy, Articles of Incorporation).

[23]    Ex. 12 (Draft Op-Ed) (showing feedback provided by Newton) (the exhibit contains two copies of the same draft op-ed); 13 (Email from thanks@fairplay.org regarding complaint signed by "Lacie @ 4FairPlay").

136.    As revealed in documents produced by Levin in May 2024, 4 Fair Play, following its incorporation, executed a consulting agreement with Square Strategies, a firm controlled by Levin.[24]

137.    Square Strategies performed a variety of services for 4 Fair Play, including establishing email service, engaging web engine hosting, facilitating Google advertisements, and working with Newton to draft op-eds supporting the 4FairPlay Website's mission.[25]

138.    4 Fair Play paid Square Strategies over $75,000.[26]

139.    Levin facilitated the dissolution of 4 Fair Play on March 1, 2024—a mere three days before Skillz filed a lawsuit against Papaya in the Southern District of New York ("S.D.N.Y.") on March 4, 2024.[27]

140.    Similarly, the 4FairPlay Website was taken down at some point between February 28, 2024 and March 9, 2024—i.e., within days of Skillz's filing of the complaint against Papaya in the S.D.N.Y. litigation.

141.    Due to the foregoing information exposed by the Virginia state court action, Skillz was forced to admit through counsel in July 2024 that it (a) "provided monetary funds to Fair Play for Mobile Games," (b) made payments "related to 4fairplay.org to" the freelance web developer

---

[24]    Exs. 16 (Consulting Services Agreement); 17 (Letter from J. Levin to Fair Play for Mobile Games Board of Directors (Aug. 14, 2023)); 18 (Fair Play for Mobile Games, Unanimous Written Consent of the Board of Directors).

[25]    Exs. 19 (Square Strategies Invoices); 12 (Draft Op-Ed).

[26]    Exs. 19 (Square Strategies Invoices); 11 (California Lobbying Record) (showing payments to Square Strategies from 4 Fair Play).

[27]    Ex. 20 (Fair Play for Mobile Games, Articles of Dissolution).

that designed the 4FairPlay Website, "Mr. [Adam] Shen," and (c) had "relationship[s]" with Shen and The Gober Group.[28]

142.    Serving as the go-between for Skillz, Defendants also conducted lobbying activities in at least California and New Jersey through 4 Fair Play, including lobbying attorneys general.[29]

143.    In its California disclosure, 4 Fair Play described its lobbying activities as unspecified outreach concerning "Attorney General action relating to mobile gaming."[30]  4 Fair Play paid both Square Strategies and Assemble for their lobbying work.[31]

144.    Upon information and belief, one aspect of this supposed lobbying was Defendants' coordinated scheme to disseminate knowingly fabricated customer complaints from the 4FairPlay Website to government officials with the malicious intent to prompt baseless investigations into Papaya and other competitors.

145.    Even after the dissolution of 4 Fair Play and the termination of the 4FairPlay Website, Skillz continues to seek to weaponize law enforcement against its competitors.  For example, Paradise noted during Skillz's Q2 2024 earnings call that Skillz was "hopeful that government authorities will take note of our progress in identifying fraudulent bot use in this industry and take the quick and needed actions to protect consumers."[32]

146.    Paradise made similar statements in Skillz's Q4 2024 earnings call: "We will continue to do our part as we advocate for enhanced policies and legislation to strengthen the

---

[28]    *See* Ex. 21 (Email from M. Lombardo to M. McIntosh (July 1, 2024)).

[29]    *See* Exs. 11 (California Lobbying Record); 22 (New Jersey Lobbying Record).

[30]    Ex. 11 (California Lobbying Record).

[31]    Ex. 11 (California Lobbying Record).

[32]    *Q2 2024 Skillz Inc Earnings Call*, Yahoo! Finance (Aug. 2, 2024), https://finance.yahoo.com/news/q2-2024-skillz-inc-earnings-173158053.html.

regulatory oversight of our space.  This includes having regulatory authorities take the necessary actions to stop the billions of dollars of fraud, stealing the hard earned savings of American consumers."[33]

## V.    Defendants' Unlawful Conduct Has Harmed Papaya

147.    Defendants' willful deceptive conduct was intended to harm, and has harmed, Papaya.

148.    Absent being deceived by Defendants' numerous false representations about Papaya, upon information and belief, at least some mobile gamers would have chosen to play Papaya games.

149.    The false suggestion that Papaya has been the subject of thousands of customer complaints, that it is the subject of more than eight complaints every minute, and that consumers complain about Papaya more than they complain about any other gaming company (including Skillz, which supposedly faces *no* complaints), have eroded Papaya's hard-earned goodwill and favorable reputation.

150.    Defendants' denigration of Skillz's competitors also harmed Papaya by bringing disrepute to portions of the mobile gaming industry and diverting consumers away from Papaya.

151.    Defendants likewise caused Papaya to incur expenses, including legal fees, related to the 4FairPlay Website's falsehoods and the foreseeable dissemination of complaints.

152.    Papaya's loss of customers, reputational harm, and resulting expenses have caused damages that exceed $75,000.

---

[33]    *Earnings Call Transcript: Skillz Q4 2024 Sees Revenue Drop, Stock Dips*, Investing.com (Mar. 13, 2025),    https://www.investing.com/news/transcripts/earnings-call-transcript-skillz-q4-2024-sees-revenue-drop-stock-dips-93CH-3928260.

<u>COUNT I</u>
**Business Conspiracy in Violation of Va. Code Ann. § 18.2-499**
**(All Defendants)**

153.    All preceding paragraphs are repeated, re-alleged, and incorporated as if fully set forth herein.

154.    As detailed above, Defendants have made false and misleading statements about Papaya in connection with the fraudulent 4FairPlay Website, including by fabricating customer complaints about mobile games' alleged bot use, presenting fabricated data about the complaints about Papaya and other mobile gaming companies to deliberately mislead consumers into believing that Papaya faced thousands of bot-related complaints and spur additional complaint submissions, and disseminating altered complaints to state attorneys general and federal law enforcement.

155.    Under Va. Code. Ann. § 18.2-499(A), "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of," among other things, "willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . shall be jointly and severally guilty of a Class 1 misdemeanor." A corresponding statute permits "[a]ny person who shall be injured in his reputation, trade, business, or profession by reason of a violation of § 18.2-499" to initiate a civil action and "recover three-fold the damages by him sustained." *Id.* § 18.2-500(A).

156.    Defendants are two or more persons who, along with Skillz, had a common goal of willfully and maliciously causing harm to Papaya's business and created, operated, and controlled the Website to achieve that purpose. They cooperated to fabricate customer complaints, present fabricated data about the complaints online, and disseminate altered complaints to law enforcement

with the purpose of willfully and maliciously injuring Papaya's business.  They knew that statements on the 4FairPlay Website and in customer complaints were false.

157.    Defendants' conduct was unlawful for several reasons, including because it, as set forth below, constituted defamation and violated the Lanham Act.

158.    Defendants' conduct was also unlawful because it violated several state consumer protection laws.  *See, e.g.*, Va. Code Ann. § 59.1-200 (West 2024); Cal. Bus. & Prof. Code § 17500 (West 2024); N.J. Stat. Ann. § 56:8-2 (West 2024).  Defendants unfairly disparaged Papaya through many false and misleading statements on the 4FairPlay Website as part of Skillz's deceptive advertising campaign that misled consumers about the nature of Skillz's and its competitors' games, drove players away from Papaya's games to games on the Skillz platform, and harmed both Papaya and consumers.

159.    Defendants' conduct was also unlawful because it violated federal and state law prohibiting individuals from lying to law enforcement.  *See, e.g.*, 18 U.S.C. § 1001; N.Y. Penal Law § 175.30.  Upon information and belief, Defendants knowingly and willfully manipulated complaints about Papaya's alleged bot use that they disseminated to federal and state law enforcement, all the while knowing that the complaints contained materially false statements.

160.    As a direct and proximate result of Defendants' unlawful acts, which were committed in furtherance of the above-described conspiracy to harm Papaya's business, Papaya suffered damages, including through reputational harm and loss of goodwill.

161.    Papaya also was forced to incur legal fees to respond to the false representations on the 4FairPlay Website and in complaints and the foreseeable consequences of their dissemination.

## COUNT II
## Common Law Conspiracy
## (All Defendants)

162.    All preceding paragraphs are repeated, re-alleged, and incorporated as if fully set forth herein.

163.    As detailed above, Defendants have made false and misleading statements about Papaya in connection with the fraudulent 4FairPlay Website, including by fabricating customer complaints about mobile games' alleged bot use, presenting fabricated data concerning the complaints about Papaya and other mobile gaming companies to deliberately mislead consumers into believing that Papaya faced thousands of bot-related complaints and spur additional complaint submissions, and disseminating altered complaints to state attorneys general and federal law enforcement.

164.    The tort of common law conspiracy imposes liability on two or more persons who combine to accomplish, by some concerted action, some criminal or unlawful purpose by a criminal or unlawful means, and whose acts committed in furtherance of the conspiracy cause damage.

165.    Defendants are two or more persons who, along with Skillz, had a common goal of causing harm to Papaya's business and unlawfully created, operated, and controlled the 4FairPlay Website to achieve that purpose. They cooperated to fabricate customer complaints, present fabricated data about the complaints, and disseminate altered complaints to law enforcement with the purpose of willfully and maliciously injuring Papaya's business. They knew or recklessly disregarded that statements on the 4FairPlay Website and in customer complaints were false.

166.    Defendants' conduct was unlawful, including because it constituted defamation and violated the Lanham Act and several state consumer protection laws.

167. As a direct and proximate result of Defendants' unlawful acts, which were committed in furtherance of the above-described conspiracy to harm Papaya's business, Papaya suffered damages, including through reputational harm and loss of goodwill.

168. Papaya also was forced to incur legal fees to respond to the false representations on the 4FairPlay Website and in complaints and the foreseeable consequences of their dissemination.

## COUNT III
### Defamation
### (All Defendants)

169. All preceding paragraphs are repeated, re-alleged, and incorporated as if fully set forth herein.

170. As detailed above, Defendants have made false and misleading statements about Papaya in connection with the fraudulent 4FairPlay Website, including by fabricating customer complaints about mobile games' alleged bot use, presenting fabricated data concerning the complaints about Papaya and other mobile gaming companies to deliberately mislead consumers into believing that Papaya faced thousands of bot-related complaints and spur additional complaint submissions, and disseminating altered complaints to state attorneys general and federal law enforcement.

171. The tort of defamation imposes liability on persons who publish an actionable statement with the requisite intent.

172. Defendants published actionable statements by posting knowingly false representations and fabricated data on the 4FairPlay Website, which was publicly accessible for at least a six-month period, as well as disseminating false and misleading complaints to law enforcement. Defendants knew or recklessly disregarded that these statements were false.

173.    Defendants' conduct constituted defamation per se because the false representations and fabricated data posted on the 4FairPlay Website and contained within the false and misleading complaints disseminated to law enforcement prejudiced Papaya in its profession or trade by casting aspersions on its honesty and prestige as a business.

174.    In addition, Defendants' conduct caused reputational harm to Papaya, which lost standing in the community as a result.

175.    Defendants' unlawful actions have harmed Papaya, including by way of lost revenue, market share, and profits, in an amount to be proven at trial.

176.    Papaya also was forced to incur legal fees related to the false representations.

### COUNT IV
**False Advertising in Violation of 15 U.S.C. § 1125(a)(1)(B)**
**(All Defendants)**

177.    All preceding paragraphs are repeated, re-alleged, and incorporated as if fully set forth herein.

178.    As detailed above, Defendants made false and misleading statements about Papaya and other mobile gaming companies in connection with the fraudulent 4FairPlay Website, including by fabricating customer complaints about mobile games' alleged bot use, presenting fabricated data regarding the complaints about Papaya and other mobile gaming companies to deliberately mislead viewers into believing that Papaya faced thousands of bot-related complaints and spur additional complaint submissions, and disseminating altered complaints to state attorneys general and federal law enforcement.

179.    The Lanham Act imposes liability on persons who, among other things, "on or in connection with any goods or services . . . use[] in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial

advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."   15 U.S.C. § 1125(a)(1)(B).

180.    Defendants made claims about Papaya's services that were literally false, false by necessary implication, and/or misleading.

181.    Defendants' statements on the 4FairPlay Website constituted a commercial advertisement.   Knowingly conspiring with Skillz, which is in commercial competition with Papaya, Defendants made the false statements for the purpose of influencing customers to use Skillz's services instead of Papaya's.   The statements, which were posted on a website available to the public throughout the United States, were disseminated sufficiently to and targeted toward the relevant purchasing public to constitute advertising within the mobile gaming industry.

182.    Defendants' false statements on the 4FairPlay Website deliberately and actually deceived or had the tendency to deceive a substantial segment of the 4FairPlay Website's audience.

183.    Defendants' false statements were material in that they were likely to influence customers' decisions to use Papaya's services.

184.    By posting the false statements to the 4FairPlay Website, which was accessible throughout the United States, Defendants caused those statements to enter interstate commerce.

185.    As a result of Defendants' conduct, Papaya has been injured through a loss of goodwill associated with its mobile gaming products.

186.    Defendants' unlawful actions have harmed Papaya, including by way of lost revenue, market share, and profits, in an amount to be proven at trial.

187.    Papaya also was forced to incur legal fees related to the false representations.

## JURY TRIAL DEMAND

Papaya requests a trial by jury on all issues so triable.

## RELIEF REQUESTED

WHEREFORE, Papaya Gaming, Ltd. respectfully requests that this Court enter judgment against Defendants for the following:

1.       Injunctive relief;

2.       Monetary damages in the form of actual, compensatory, and consequential damages suffered as a result of Defendants' wrongful conduct;

3.       Statutory, treble, and/or punitive damages;

4.       Costs and attorneys' fees incurred in this action;

5.       Pre- and post-judgment interest to the extent permitted by law; and

6.       Such other relief as the Court may deem just and proper.


Dated: March 14, 2025                    Respectfully submitted,

/s/ ___Todd D. Kelly_____
Todd D. Kelly (Va. Bar No. 92331)
Margaret E. Krawiec (*pro hac vice motion forthcoming*)
David B. Leland (*pro hac vice motion forthcoming*)
Michael A. McIntosh (*pro hac vice motion forthcoming*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave. NW
Washington, DC 20005
Phone: (202) 371-7000
Fax: (202) 393-5760
todd.kelly@skadden.com
david.leland@skadden.com
margaret.krawiec@skadden.com
michael.mcintosh@skadden.com

*Counsel for Papaya Gaming, Ltd.*