**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

PAPAYA GAMING, LTD.,                )
                                    )
                    Plaintiff,      )    Case No. 1:25-cv-00470
                                    )
            v.                      )    District Judge Michael S. Nachmanoff
                                    )    Magistrate Judge Ivan D. Davis
                                    )
FAIR PLAY FOR MOBILE GAMES,         )
JOSH LEVIN, SQUARE STRATEGIES, LLC, )
LACIE NEWTON, and ASSEMBLE          )
THE AGENCY, LLC, et al.             )
                                    )
                    Defendants.     )
                                    )

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS ASSEMBLE THE AGENCY, LLC AND LACIE NEWTON'S
MOTION FOR SANCTIONS AGAINST PLAINTIFF PAPAYA GAMING, LTD.**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 5

II.   BACKGROUND........................................................................... …………………...8

III.  LEGAL ARGUMENT.................................................................................................. 13

   A.   Legal Standard for The Imposition of Sanctions............................................. 14

   B.   The Assemble Defendants Are Entitled to Sanctions in the Amount of Their Attorneys'
        Fees to Defend Against Papaya's Baseless Allegations. ................................... 17

IV.   CONCLUSION............................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212 (4th Cir. 2004)................ 6

*AMA Sys., LLC v. 3B Tech., Inc.*, 2023 U.S. Dist. LEXIS 201228 (D. Md. Nov. 9, 2023)............ 6

*Arnold v. Capital One Servs.*, 2011 U.S. Dist. LEXIS 24200 (E.D. Va. Mar. 10, 2011) ............... 6

*Blue v. U.S. Dept. of the Army*, 914 F.2d 525 (4th Cir. 1990) ....................................................... 13

*Brubaker v. City of Richmond*, 943 F.2d 1363 (4th Cir. 1991).......................................... 13, 16, 17

*Cabell v. Petty*, 810 F.2d 463 (4th Cir. 1987) ............................................................................... 13

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952 (E.D. Va. 2020)................ 6

*Chaves v. Johnso*n, 230 Va. 112 (1985) .......................................................................................... 5

*Harris v. Marsh*, 679 F. Supp. 1204 (E.D.N.C. 1987)................................................................... 14

*Harris v. Marsh* , 914 F.2d 525 (4th Cir. 1990).............................................................................. 14

*In re Kunstler*, 914 F.2d 505 (4th Cir. 1990) ........................................................................... 13, 14

*Johnson v. Lyddane*, 368 F. Supp. 2d 529 (E.D. Va. 2005)........................................................... 14

*Johnson v. Norfolk State Univ.*, 2023 U.S. Dist. LEXIS 233278 (E.D. Va. Dec. 12, 2023) ........ 16

*Joseph Giganti Veritas Media Group, Inc. v. Gen-X Strategies, Inc.*, 222 F.R.D. 299 (E.D. Va. 2004) ............................................................................................................................................ 16

*Masco Contractor Servs. E., Inc. v. Beals*, 279 F.Supp.2d 699 (E.D. Va. 2003) .......................... 5

*Morris v. Wachovia Sec.*, 448 F.3d 268 (4th Cir. 2006)......................................................... 13, 16

*Moseley v. Gardiner*, 2021 U.S. Dist. LEXIS 155400, (E.D. Va. July 16, 2021) ....................... 14

*Papaya Gaming, Ltd. v. John Doe et al.*, Case. No. CL24001202-00.......................................... 8

*Perez v. BAT Masonry Co.*, 2016 U.S. Dist. LEXIS 180165 (W.D. Va. Dec. 30, 2016) ............. 14

*Phillips v. LCI Int'l Inc.*, 190 F.3d 609 (4th Cir. 1999) ................................................................. 6

*Raya v. NPAS, Inc.*, 2020 U.S. Dist. LEXIS 117172, (E.D. Va. May 11, 2020)......................... 13

*Sanders v. Farina*, 197 F.Supp.3d 892 (E.D. Va. 2016)...................................................................... 14

*Sanders v. Farina*, 671 Fed. Appx. 183 (4th Cir. 2016)..................................................................... 14

*Skillz Platform Inc. v. Papaya Gaming Ltd., et al.*, SDNY Case No. 1:24-cv-01646-DLC ........... 4

*Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783 (5th Cir. 1986).............................. 14

*Wolfe v. Zuckerman*,
Civil Action No. 1:20-cv-00175, 2020 U.S. Dist. LEXIS 162525 (E.D. Va. Sep. 4, 2020) ........ 17

**Statutes**
Lanham Act, 15 U.S.C. §1125 ..................................................................................................... 7, 10
New York General Business Law, §349 ........................................................................................... 7

**Rules**
Fed. R. Civ. P. 11 ................................................................................................................... passim
Fed. R. Civ. P. 12 ......................................................................................................................... 12

4

Defendants Assemble the Agency, LLC ("Assemble") and Lacie Newton ("Ms. Newton"; collectively with Assemble, "the Assemble Defendants") respectfully file this Memorandum of Law in Support of their Motion for Sanctions against Plaintiff Papaya Gaming, Ltd. ("Papaya"), pursuant to Fed. R. Civ. P. 11 and this Court's inherent powers.

## I.    INTRODUCTION

Since March 2024, when Skillz Platform Inc. ("Skillz") commenced its legal action for false advertising against Papaya in the Southern District of New York[1], Papaya has been engaging in scorched earth litigation tactics against Skillz, and anyone connected to Skillz or the 4FairPlay Website, including the Assemble Defendants, for their roles in what Papaya purports to be "a fraudulent crusade to smear Papaya and other mobile gaming companies while positioning Skillz Platform, Inc., a competitor mobile gaming company, as the only company that can be trusted to provide players with a fair mobile gaming experience." (Am. Compl. ¶ 2.)

In fact, 4 Fair Play was, as Papaya admits, a social welfare nonprofit that was a duly registered I.R.C. §501(c)(4) organization (Am. Compl. Exhs. 5 (DE 20-5), 7 (DE 20-7)) that is no longer in existence (Am. Compl. Exh. 20 (DE 20-20)),[2] with a "mission to bring fairness to mobile gaming [and] to promot[e] fair, transparent policies and practices in the industry…[and] to educate the public on fair play and provide tools and resources players need to protect themselves if they've been scammed." (Am. Compl. ¶ 153.)

Papaya's Amended Complaint alleges that, in addition to work related to 4 Fair Play, the Assemble Defendants took part in an "interview scheme" that tortiously induced two former

---

[1] *Skillz Platform Inc. v. Papaya Gaming Ltd., et al.*, United States District Court for the Southern District of New York Case No. 1:24-cv-01646-DLC ("the S.D.N.Y. Litigation").

[2] Fair Play also operated under the DBA "4FairPlay" (Am. Compl. Exh. 7 (DE 20-7)).

Papaya employees—Or Kaim and Ariel Feldman—to breach their nondisclosure agreements with Papaya, for the benefit of Skillz, Papaya's competitor. (Am. Compl. ¶¶ 184-245, 255-263.)

Papaya does not disclose to the Court that, prior to the commencement of this litigation, from October 23, 2024, through and including January 31, 2025, Ms. Newton (and Assemble) produced thousands of documents to Papaya[3] and that some of them, which were submitted to the Court by the Assemble Defendants' motion to dismiss (DE 54-1),[4] on their face, *disprove* Papaya's tortious interference claim.

The interview process was established with safeguards in place to ensure that former employees with nondisclosure agreements *were not interviewed* (DE 54-1); here, both former employees affirmatively stated, at least once, that *they were not subject to any such agreements*.[5] Thus, Papaya cannot, in good faith, assert a claim for tortious interference, because this claim depends upon the alleged tortfeasor having knowledge of a contract, and then inducing its breach. *Id.* Here, the opposite is true; Mr, Kaim and Mr. Feldman affirmatively stated that *they were not subject to a nondisclosure agreement*.

As Papaya knows—but did not share with this Court—the process put in place for the interviews asked potential interviewees whether they were "currently under any NDA with any

---

[3] Papaya served *subpoenas duces tecum* upon both of the Assemble Defendants in the S.D.N.Y. Litig., to which Ms. Newton provided five (5) separate productions.

[4] For the Court's convenience, a copy of the documents that had been filed as DE 54-1 are attached to the Declaration of Christina Bost Seaton ("Bost Seaton Decl.") as Exhibit 6.

[5] One of the elements of a claim of tortious interference with contract is that the party alleged to have committed the tort **knew about the contract at issue**. *Masco Contractor Servs. E., Inc. v. Beals*, 279 F.Supp.2d 699, 709 (E.D. Va. 2003) (citing *Chaves v. Johnson*, 230 Va. 112, 120 (1985)) (emphasis added).

former gaming employers that would prevent them from participating in a research study."[6] (DE 54, ¶ 10; 54-1 at 3.)

Based upon the discovery that the Assemble Defendants provided in the S.D.N.Y. Litigation, Papaya knows that potential interviewees were asked to fill out a Google Form that included, among other screening questions, a question as to whether they were subject to an NDA or a confidentiality agreement; interviewees would not be interviewed if they answered yes. (*Id.*; and DE. 54-1 at 5, 7-9.)

And, in addition to the screening form, Papaya knows that, in addition, Mr. Kaim, responded to an email from Valor asking him, before they moved forward, "Are you under an NDA or confidentiality agreement that prevents sharing your opinions and experiences?" with the clear response, "**I'm not currently under any NDA**", which was then forwarded to Ms. Newton. (DE 54, ¶10; 54-1 at 8) (emphasis added.)

The Assemble Defendants *twice* wrote Papaya letters explaining why Papaya's allegations in the original complaint and the Amended Complaint were legally and factually baseless, and thus

---

[6] The Assemble Defendants provided these documents to the Court on their motion to dismiss, and the Court is permitted to review them both on the motion to dismiss and on this motion. *See AMA Sys., LLC v. 3B Tech., Inc.*, 2023 U.S. Dist. LEXIS 201228, *9 (D. Md. Nov. 9, 2023) citing *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)); *Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 960 (E.D. Va. 2020) (stating that a court may consider documents outside a complaint on a motion to dismiss "…, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Arnold v. Capital One Servs.*, 2011 U.S. Dist. LEXIS 24200, *11-12 (E.D. Va. Mar. 10, 2011)(explaining that "[t]he rule that a court must convert a motion to dismiss into a motion for summary judgment if it considers documents outside the complaint does not apply if the document is considered "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity."). Papaya did not challenge the authenticity of these documents in its opposition memorandum. (DE 79, at 34, n.7.)

subject to sanctions pursuant to Rule 11, including directing Papaya to these documents in the Assemble Defendants' production and requested that Papaya voluntarily dismiss them from this litigation (Bost Seaton Decl., Exhs. 1 and 2), but Papaya has continued this baseless and frivolous litigation.  Accordingly, the Assemble Defendants hereby request that this Court order Rule 11 sanctions against Papaya.

## II.    BACKGROUND

Papaya's lack of candor in the Amended Complaint is, unfortunately, no surprise; indeed, Papaya's entire business model is alleged to be based upon its false representations to consumers.

Specifically, in March 2024, the S.D.N.Y. Litigation was commenced by Skillz against Papaya alleging that Papaya violated the Lanham Act, 15 U.S.C. §1125, and the New York General Business Law, §349 by falsely advertising to consumers that Papaya's games (like Skillz's) pit human players together when, in fact, Papaya uses bots. (Request for Judicial Notice, dated June 5, 2025 (the "RJN"), Exh. 1 (S.D.N.Y. Litig., DE 1)).

Papaya moved to dismiss the Complaint in the S.D.N.Y. Litigation, but the Court *denied* the motion, holding that Skillz "sufficiently allege[d] that Papaya's representations about the nature of its games is impliedly false." (RJN Exh. 2 (S.D.N.Y. Litig., DE 40)).

Later, on Papaya's motion for leave to file the Proposed Second Amended Complaint ("PSAC"), the Court in the S.D.N.Y. Litigation noted that "the issue of the integrity of Papaya's business practices and its deception of the public about its historic use of bots to compete with customers in its games of 'skill' are at the heart of this case. Papaya does not deny such undisclosed historic use in its PSAC or otherwise in this litigation" and noted that "[i]n recent depositions, none of Papaya's individual deposition witnesses denied the historic use of bots, as they all asserted

their Fifth Amendment rights against self-incrimination rather than testifying to any potentially disputed facts." (RJN Exh. 7 (S.D.N.Y. Litig. DE 323, pp.13-14)).

Papaya's scorched earth tactics against Skillz, as well as anyone Papaya can locate that appears to have been connected to the 4FairPlay Website, began on April 18, 2024, when Papaya filed a complaint in the Circuit Court of Arlington County, Virginia, captioned *Papaya Gaming, Ltd. v. John Doe et al.*, Case. No. CL24001202-00 (the "Virginia State Court Litigation") (RJN Exh. 8).

The Virginia State Court Litigation alleged that the 4FairPlay Website used fabricated data to mislead visitors into believing that Papaya was the subject of numerous complaints, and otherwise purportedly disseminated false information to damage Papaya's reputation and business. (*Id.*) Papaya asserted claims for business conspiracy, common law conspiracy, defamation, and false advertising. (*Id.*)

In the Virginia State Court Litigation, Papaya then served numerous *subpoenas duces tecum* (*id*. at Exh. 9 (subpoenas)). including upon some of the defendants herein (or other people referenced in the Amended Complaint) such as defendants Josh Levin and Square Strategies LLC, the Gober Group PLLC (the law firm that Papaya alleges Levin hired to form 4 Fair Play (Am. Compl. ¶162)), 4Fairplay Website developer, Adam Shen (Am. Compl. ¶ 91), and 4 Fair Play board member, Rocky Matthews. (Am. Compl., Exh. 16.)

Five months later, in August 2024, after the Court in the S.D.N.Y. Litigation *denied* Papaya's motion to dismiss Skillz's complaint, Papaya filed counterclaims against Skillz in the S.D.N.Y. Litigation, alleging, *inter alia*, that Skillz had engaged in false advertising, deceptive trade practices, defamation, civil conspiracy, and other claims arising from the actions of

9

4fairplay.org and the "Fair Play for Mobile Games" organization (RJN Exh. 3 (S.D.N.Y. Litig, DE 46)).

One month later, on September 4, 2024, Skillz moved to dismiss Papaya's counterclaims (S.D.N.Y. Litig. DE 75)).[7]

That same day, Papaya issued a subpoena not to Assemble—the entity that had contracted with Skillz to establish and support Fair Play for Mobile Games—but only to Ms. Newton, an employee of Assemble (Bost Seaton Decl. at ¶ 5, Exh. 3). The subpoena commanded Ms. Newton to produce documents and permit inspection related to her work for Assemble relating to 4fairplay.org (*id.*). On September 20, 2024, through counsel, Ms. Newton served her objections and responses to Papaya's subpoena (*id.* at ¶ 7).

Later, on December 18, 2024, Papaya issued a subpoena to Assemble itself, requesting largely the same documents that it had requested from Ms. Newton (*id*. at ¶ 6, Exh. 4). On January 8, 2025, Assemble issued its objections and responses to Papaya's subpoena (*id*. at ¶ 7).

The Assemble Defendants diligently complied with Papaya's *subpoenas duces tecum* in the S.D.N.Y. Litigation. On October 23, 2024, Ms. Newton began to produce responsive documents; her first production was comprised of approximately 383 pages of documents; on November 6, 2024, she produced a second production of approximately 801 pages of documents; on December 5, 2024, she produced a third production of approximately 528 pages of documents; on January 9, 2025, the Assemble Defendants collectively produced a fourth production of approximately 179 pages of documents; and on January 31, 2025, the Assemble Defendants

---

[7] Later that month, on September 23, 2024, Papaya filed its First Amended Counterclaims in the S.D.N.Y. Litigation (RJN Exh. 4 (S.D.N.Y. Litig. DE 88)).

produced a fifth production of approximately 158 pages of documents. In total, the Assemble

Defendants produced approximately 2,049 pages of documents to Papaya (*id*. at ¶ 7).

A week after the Assemble Defendants completed their productions to Papaya, on February

7, 2025, the Court in the S.D.N.Y. Litigation dismissed Papaya's counterclaims relating to the

4fairplay.org website in their entirety. In that decision, the Court stated, among other things:

> According to [Papaya's First Amended Counterclaims], Skillz implied through the
> graphics and content on the 4FairPlay website that its competitors, including
> Papaya, have been the subjects of many consumer complaints related to the use of
> bots and unfair games, while Skillz has not. Skillz argues that Papaya has failed to
> sufficiently allege that the challenged statements were false. **Skillz is correct**. . . .
>
> Papaya highlights three aspects of the 4FairPlay website aside from the consumer
> complaint graphics that it says amounted to false advertising: Skillz's hiding its
> involvement to 'give the impression' that 4FairPlay was unbiased, the 'design' of
> the website suggesting its impartiality, and the website's omission of Skillz as an
> option for the subject of complaints. But these accusations do not identify 'any
> description of fact,' 15 U.S.C. § 1125(a)(1), or statement about a product or service,
> much less a false one. **Accordingly, Papaya's Lanham Act and § 349 claims
> regarding the 4FairPlay website are dismissed**. . . .
>
> [With respect to Papaya's claim for defamation,] Papaya first alleges that the
> 4FairPlay website's various representations indicating that Papaya had been the
> subject of consumer complaints were defamatory. Skillz argues that Papaya has not
> sufficiently alleged that those statements were false in the sense required to state a
> defamation claim. **Skillz is correct. . . . Papaya . . . notes that other statements
> on the 4FairPlay website -- about 'fraudulent games' and 'scams' -- can
> support its defamation claim. This argument fails as well**. (S.D.N.Y. Litigation,
> DE 234).

((RJN Exh. 5, (S.D.N.Y. Litig. DE 234).)

The Court in the S.D.N.Y. Litigation also dismissed Papaya's counterclaims for civil

conspiracy on the same legal grounds that it dismissed Papaya's false advertising and defamation

counterclaims. (*Id*.)

Papaya then engaged in a scheme to circumvent these adverse rulings. *First,* on February

24, 2025, Papaya's counsel advised the Assemble Defendants' counsel that Papaya would be

willing to agree to not pursue claims against Ms. Newton individually—not Assemble, only Ms. Newton—if Ms. Newton would agree to remove the Confidential designation from certain of the documents that had been produced in response to Papaya's subpoenas.  (Bost Seaton Decl. ¶ 8, Exh. 5) Ms. Newton declined this "offer." (*Id*.)

*Second,* the very next week, on March 3, 2025, Papaya filed its Motion for Leave to File Second Amended Counterclaims (the "PSAC") in the S.D.N.Y. Litigation (S.D.N.Y. Litig., DEs 268, 269, 270-1)).[8]  As detailed in the Assemble Defendants' motion to dismiss the Amended Complaint, the PSAC contained nearly identical allegations to the Amended Complaint, including claims related to the purported "interview scheme."  (*See* DE 52-2, p.13.)

*Third,* just over ten days later, on March 14, 2025, Papaya filed the original complaint in this litigation, which was substantively identical to the previously dismissed First Amended Complaint in the S.D.N.Y. Litigation.  (*Compare* DE 1 to RJN Exh. 4 (S.D.N.Y. Litigation, DE 88)).  Then, a few weeks later, on March 26, 2025, the Court in the S.D.N.Y. Litigation denied Papaya leave to amend, finding that the PSAC—including its new allegations regarding the purported "interview scheme"—was futile to state a claim against Skillz (RJN Exh. 7 (S.D.N.Y. Litigation, DE 323)).

Finally, trying to advance in its claims in what it perceives as a more favorable forum, the Amended Complaint in this litigation followed one week later, on April 4, 2025. The Assemble Defendants have moved to dismiss on numerous bases (*see* DE 52-2); as described in detail in the motion, the PSAC is substantially identical to the Amended Complaint in this litigation (*see* DE 52-2, pp. 13-14 (table comparing allegations)), and relied heavily upon documents produced by the Assemble Defendants.

---

[8] A copy of the PSAC is attached to the RJN as Exhibit 6.

### III.    LEGAL ARGUMENT

Papaya brings these claims to gain leverage against non-party Skillz, the competitor for whom the Assemble Defendants (and the other defendants in this litigation) performed services.[9], and to try its luck with a different judge, in a different forum, since it has been completely unsuccessful to date in the S.D.N.Y. Litigation.

In its scorched earth litigation tactics, however, Papaya has not been transparent with this Court.  Papaya did not refer to the existence of the S.D.N.Y. Litigation to this Court in either its original Complaint or its Amended Complaint.  It did not disclose that its allegations herein—which are substantively identical to those in the S.D.N.Y. Litigation—have already been found—twice— by the Court in the S.D.N.Y. Litigation to be without merit.  Papaya also did not disclose the existence of the Virginia State Court Litigation, which is also based on the same factual allegations as the S.D.N.Y. Litigation and this case.  Nor did it disclose that it has already obtained extensive discovery—including non-party discovery from the Defendants herein, including the Assemble Defendants—on the very transactions and occurrences that form the basis of this litigation.

Lastly, and most importantly to the instant motion, Papaya did not disclose to the Court that the Assemble Defendants produced documents to Papaya that, on their face, *disprove* Papaya's tortious interference claim—Defendants *did not know about* Mr. Kaim's and Mr. Feldman's nondisclosure agreements.  While there are many reasons why the Amended Complaint is baseless

---

[9] Papaya alleges that Defendants conspired together for the benefit of Skillz and to the detriment of Papaya. *See* (Am. Compl., ¶ 2) ("Defendants embarked on a fraudulent crusade to smear Papaya and other mobile gaming companies while positioning Skillz Platform, Inc., a competitor mobile gaming company, as the only company that can be trusted to provide players with a fair mobile gaming experience").  All defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join Skillz, which is an indispensable party (DE Nos. 48, 49, 50, 52).

and should be dismissed, as set forth in Defendants' Motions to Dismiss (DE 52, 61), this motion is limited to the fact that Papaya intentionally misled the Court with regard to its tortious interference claim.

### A.    Legal Standard for The Imposition of Sanctions

Fed. R. Civ. P. 11 requires that a party and/or an attorney "conduct a reasonable investigation of the factual and legal basis for his or her claim before filing." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). "To be reasonable, the prefiling investigation must uncover some information" and basis in law "to support the allegations in the complaint." *Id*. A Rule 11 inquiry centers on whether a reasonable plaintiff in similar circumstances could believe his actions to be factually and legally justified. *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987). Rule 11 empowers the Court to sanction a party and/or its counsel for insisting on a position that is not tenable. *Morris v. Wachovia Sec.*, 448 F.3d 268, 279 (4th Cir. 2006); *see* Fed. R. Civ. P. 11(c)(1) (sanctions may be imposed upon "on any attorney, law firm, or party who violated the rule or is responsible for the violation").

In determining whether a Rule 11 violation has occurred, a court should assess whether counsel:

(1)    had a factual and legal basis to support the filing of the pleading; and

(2)    filed the pleading with an improper motive.

*In re Kunstler*, 914 F.2d 505, 513 (4th Cir. 1990); *see also Raya v. NPAS, Inc.*, 2020 U.S. Dist. LEXIS 117172, *7 (E.D. Va. May 11, 2020) (*citing Blue v. U.S. Dept. of the Army*, 914 F.2d 525, 533 (4th Cir. 1990)). An improper purpose is determined "under an objective standard of reasonableness rather than assessing subjective intent"; "If counsel willfully files a baseless complaint, a court may properly infer that it was filed either for purposes of harassment, or some

14

purpose other than to vindicate rights through the judicial process." *Kunstler*, 914 F.2d at 518. "'Circumstantial facts surrounding the filing may also be considered as evidence of the [party's] purpose.'" *Sanders v. Farina*, 197 F.Supp.3d 892, 900 (E.D. Va. 2016) (*quoting Kunstler*, 914 F.2d at 519), aff'd, 671 Fed. Appx. 183 (4th Cir. 2016).

Rule 11 requires a party and its counsel to perform a "prefiling investigation of law and fact which is objectively reasonable under the circumstances." *Moseley v. Gardiner*, 2021 U.S. Dist. LEXIS 155400, *10-11 (E.D. Va. July 16, 2021) (citing *Johnson v. Lyddane*, 368 F. Supp. 2d 529, 532 (E.D. Va. 2005)).  Further, where documents or other information are accessible to a party and/or its counsel, they must review them, and their failure to do so violates the requirement that they must make a reasonable factual inquiry. *Perez v. BAT Masonry Co.*, 2016 U.S. Dist. LEXIS 180165, *6 (W.D. Va. Dec. 30, 2016) ("Factual allegations violate Rule 11(b)(3) when such allegations "are 'unsupported by *any* information obtained prior to filing.'")(citations omitted)(emphasis in original); *see also Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) (counsel sanctioned for, *inter alia*, failing to examine pleadings, briefs and records of a previous action that would have disclosed that all claims were barred by the doctrine of *res judicata*); *Harris v. Marsh*, 679 F. Supp. 1204, 1386 (E.D.N.C. 1987), aff'd, 914 F.2d 525 (4th Cir. 1990) ("When an attorney can get information necessary to certify the validity of a claim in public fashion and need not rely on the client, he must do so").

Papaya's Amended Complaint alleges that the Assemble Defendants tortiously induced two former Papaya employees—Or Kaim and Ariel Feldman—to breach their nondisclosure agreements with Papaya (Am. Compl. ¶¶ 184-245, 255-263.)

Papaya does not disclose that, prior to the commencement of this litigation, from October 23, 2024, through and including January 31, 2025, Ms. Newton (and Assemble) produced

15

documents to Papaya that, on their face, *disprove* Papaya's tortious interference claim—*i.e.*, the fact that Defendants *did not know about* Mr. Kaim's and Mr. Feldman's nondisclosure agreements.

As Papaya knows—but did not share with this Court—the process put in place for the interviews asked potential interviewees whether they were "currently under any NDA with any former gaming employers that would prevent them from participating in a research study." (DE 54, ¶ 10; 54-1 at 3.)

Based upon the discovery it received in the S.D.N.Y. Litigation, Papaya knows that potential interviewees were asked to fill out a Google Form that included, among other screening questions, a question as to whether they were subject to an NDA or a confidentiality agreement; interviewees would not be interviewed if they answered yes. (*Id.*; DE 54-1 at pp. 5, 7-9.)

And, in addition to the screening form, Papaya knows that Mr. Kaim responded to an email from Valor asking him, before they moved forward, "Are you under an NDA or confidentiality agreement that prevents sharing your opinions and experiences?" with the clear response, "I'm not currently under any NDA", which was then forwarded to Ms. Newton. (DE 54-1, p.8)

The Assemble Defendants were entitled to rely on these representations. There was no evidence or reason for them to believe that the employees were being untruthful or that they were, in fact, bound by confidentiality obligations.  Papaya, in its memorandum of law in opposition the motions to dismiss (DE 79, at p. 34, n.7) *admits* that Mr. Kaim issued "a terse denial of a relevant agreement," but contends, without citing any supporting authority whatsoever, that "Defendants should have tested" the denial (*id.*). This is pure nonsense. The documents, on their face, rebut the allegation that Defendants knew, or should have known, that Mr. Kaim and Mr. Feldman were subject to nondisclosure agreements. (Am. Compl. ¶ 191.)

16

Critically, Papaya had these documents in its possession *months* before filing the present action, since at least January 31, 2025, but still chose to deceptively plead to this Court. (Bost Seaton Decl. ¶ 9, Exh. 6.)

**B.    The Assemble Defendants Are Entitled to Sanctions in the Amount of Their Attorneys' Fees to Defend Against Papaya's Baseless Allegations.**

Once a court determines that Rule 11 has been violated, it must then determine the type of sanction to be imposed. *Brubaker*, 943 F.2d at 1373-74. A court should award fees and costs directly to the party seeking sanctions if it determines that the Rule 11 violations made "the complaint to the court a substantial failure under Rule 11(b)." *Morris v. Wachovia Sec.*, 448 F.3d 268, 278 (4th Cir. 2006).

The court must consider the following factors in calculating sanctions:

(1)    the reasonableness of the opposing party's attorney's fees;

(2)    the minimum amount to deter;

(3)    the sanctioned party's ability to pay; and

(4)    the severity of the Rule 11 violation.

*Brubaker*, 943 F.2d at 1374.

The purpose of the safe harbor period is "to allow the offending party twenty-one days to withdraw the offending claims and escape sanctions." *Johnson v. Norfolk State Univ.*, 2023 U.S. Dist. LEXIS 233278, *14 (E.D. Va. Dec. 12, 2023) (granting motion for sanctions against plaintiff who failed to withdraw or correct its pleading). A party's or attorney's failure to correct or withdraw a baseless pleading in response to a safe harbor letter is a factor that courts take into account in determining the appropriateness of sanctions. *Joseph Giganti Veritas Media Group, Inc. v. Gen-X Strategies, Inc.*, 222 F.R.D. 299 (E.D. Va. 2004) (affirming magistrate's sanctions

award against litigant that did not take advantage of the 21-day window to "withdraw an offending filing or allegation before a motion is filed.") (internal citations omitted).

Sanctions are appropriate in a reasonable amount to be determined by the Court. The Assemble Defendants issued *two* safe harbor letters to Papaya, demanding that Papaya withdraw its baseless allegations that had been rejected by Judge Cote in the S.D.N.Y. Litigation. Papaya refused to do so, and instead continued to pursue its frivolous claims. Papaya's course of action clearly warrants the imposition of sanctions. *Brubaker*, 943 F.2d at 1374; *see also Wolfe v. Zuckerman*, Civil Action No. 1:20-cv-00175, 2020 U.S. Dist. LEXIS 162525, at *11 (E.D. Va. Sep. 4, 2020) ("Defendant is entitled to the amount of legal fees and costs sustained during this case. . . . [T]he Court finds that the award of attorney's fees and costs sends a message to Plaintiff, and others similarly situated, that those who pursue frivolous litigation may risk bearing the cost to defend such litigation.").

## IV.    CONCLUSION

Wherefore, Defendants Assemble the Agency, LLC and Lacie Newton respectfully requests that the Court find that Papaya's allegations in its Amended Complaint violate Fed. R. Civ. P. 11, and that the Court sanction Papaya in the above amount, and impose any other sanctions that the Court deems just and proper.

Respectfully submitted,

*/s/ Amy Epstein Gluck*
Amy Epstein Gluck
Christina H. Bost Seaton  (pro hac vice)
Daniel Messeloff (pro hac vice)
601 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Telephone:  +1.301.526.1184
Amy.EpsteinGluck@pierferd.com
Christina.BostSeaton@pierferd.com
Dan.Messeloff@pierferd.com

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June, 2025, I electronically filed the foregoing *Memorandum of Law in Support of Motion for Sanctions* with the Clerk of the Court, which will send notification of such filing via the Court's Electronic Case Filing (ECF) system, to all counsel of record.

*/s/Amy Epstein Gluck, Esq.*
Amy Epstein Gluck, Esq.
