# Exhibit B

# Morgan Lewis

**Jordan McCrary**
Partner
+1.213.680.6768
jordan.mccrary@morganlewis.com

March 31, 2025

**VIA E-MAIL**

Todd D. Kelly
Margaret E. Krawiec
David B. Leland
Michael A. McIntosh
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave. NW
Washington, DC 20005
Phone: (202) 371-7000
Fax: (202) 393-5760
todd.kelly@skadden.com
david.leland@skadden.com
margaret.krawiec@skadden.com
michael.mcintosh@skadden.com

Re:    Papaya Gaming Ltd. v. Fair Play for Mobile Games, Case No. 1:25-cv-00470 (E.D. Va.)

Counsel,

On March 14, 2025, you signed and filed a complaint on behalf of Papaya Gaming, Ltd. ("Papaya") in the Eastern District of Virginia, Case No. 1:25-cv-00470. We represent three of the named defendants: Fair Play for Mobile Games, Josh Levin, and Square Strategies LLC. For reasons explained below, you should not have filed the complaint, and Papaya should promptly dismiss the case voluntarily to mitigate expenditures on attorneys' fees and costs in a case that should not exist. If you or Papaya continue prosecuting the complaint, please be advised that our clients reserve the right to seek sanctions and recovery of attorneys' fees and costs, including pursuant to Federal Rule of Civil Procedure 11(c), 28 U.S.C. § 1927, and anti-SLAPP laws, such as Virginia Code § 8.01-223.2 and New York Civil Rights Law Section 70-a.

1.    __The Virginia Action is Procedurally Improper Given Papaya's Claims Were Previously Dismissed by the Southern District of New York__

In the Virginia action, Papaya is improperly asserting claims that have already been dismissed by the United States District Court for the Southern District of New York in Case No. 1:24-cv-01646-DLC. In the New York action—just like the Virginia action—Papaya alleged conspiracy, defamation, and violation of the Lanham Act based on the design of Fair Play's website and submission of consumer

**Morgan, Lewis & Bockius** LLP

300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
United States

**T** +1.213.612.2500
**F** +1.213.612.2501

March 31, 2025
Page 2

complaints to state authorities and regulators. These claims were dismissed in the New York action in an Opinion and Order, dated February 7, 2025, attached as **Exhibit 1**. On March 3, 2025, Papaya moved for leave to amend its complaint in the New York action. Papaya's attempt to resurrect its dismissed claims concerning Fair Play was rejected in an Opinion and Order, dated March 26, 2025, attached as **Exhibit 2**, wherein that court again explained why Papaya's allegations (which are also asserted in the Virginia action) fail to state a claim.

Papaya is now forum shopping hoping for a different result given that the claims asserted by Papaya in the Virginia action have already been dismissed in the New York action. Papaya is not allowed to collaterally attack the Southern District of New York's orders in the Eastern District of Virginia. To the extent that Papaya disagrees with New York court's orders, then Papaya should appeal to the Second Circuit—not attempt to re-litigate the previously dismissed claims in a new court.

Papaya's re-filing the previously dismissed claims is not allowed merely because Papaya replaced one of its four causes of action, swapping a claim under New York law with a claim under Virginia law. *See Laurel Sand & Gravel, Inc. v. Wilson*, 519 F. 3d 156, 162 (4th Cir. 2008) ("Newly articulated claims based on the same transactional nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action."). Nor is Papaya's re-filing the previously dismissed claims allowed merely because Papaya decided not to name our clients as defendants in the New York action. *See Ali v. Jeng*, 86 F. 3d 1148 (4th Cir. 1996) (precluding plaintiff from "bring[ing] piece-meal litigation by naming different defendants and alleging new causes of action, when all of his claims arise from the same operative facts").

Further, Papaya was not allowed to re-file the previously dismissed claims merely because the New York court's orders dismissing Papaya's claims have not yet been reduced to a final judgment (given different claims are still proceeding in that action). "The rule against claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008). The prohibition on claim splitting fosters judicial economy and protects parties from "the vexation of concurrent litigation over the same subject matter." *Alston v. Experian Info. Sols., Inc.*, 2016 WL 901249, at *3 (D. Md. Mar. 3, 2016), *aff'd*, 680 F. App'x 243 (4th Cir. 2017). The doctrine is intended in part "to prohibit plaintiffs from 'circumventing' a court's earlier ruling." *Chihota v. Fulton, Friedman & Gullace, LLP*, 2012 WL 6086860, at *3 (D. Md. Dec. 5, 2012). "In a claim splitting case . . . the second suit will be barred if the claim involves the same parties or their privies and 'arises out of the same transaction or series of transactions' as the first claim." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626 (D. Md. 2006), *aff'd*, 273 F. App'x 256 (4th Cir. 2008).

Moreover, res judicata principles and the rule against claim splitting apply even though the defendants in the Virginia action were not named defendants in the New York action because the defendants in the Virginia action were—according to Papaya's allegations—in privity with Skillz (the defendant in the New York action). Papaya alleged in both the New York action and in the Virginia action that all the defendants in both actions were alleged co-conspirators. Indeed, Papaya's now-dismissed claims in the New York action expressly and repeatedly referred to the Virginia defendants by name. *See, e.g.*, S.D.N.Y. Case No. 1:24-cv-01646-DLC, ECF 88 ¶¶ 182-186 (alleging conspiracy at direction of Skillz involving Fair Play, Josh Levin, Square Strategies LLC, and Assemble the Agency).

March 31, 2025
Page 3

As one court has explained in a holding applicable here:

> [W]here the defendants are alleged to have been participants in a single conspiracy to [harm] plaintiff, where plaintiff had a prior opportunity to raise all claims related to the disputed series of transactions, and . . . this action is nothing more than an attempt to "collaterally attack" the judgment . . . a sufficiently close relationship existed between the alleged co-conspirators to preclude plaintiff from proceeding against any of them in this subsequent, separate action.

*Fonseca v. Columbia Gas Sys., Inc.*, 37 F. Supp. 2d 214, 228 (W.D.N.Y. 1998); *see also, e.g., In re Teltronics Servs., Inc.*, 762 F. 2d 185, 192 (2d Cir. 1985) (newly added defendant was "alleged to be a co-conspirator in the second Southern District action filed against the [other] defendants, and is entitled to the res judicata effect of that decision"); *Gambocz v. Yelencsics*, 468 F. 2d 837, 842 (3d Cir. 1972) ("relationship of the additional parties [co-conspirators] to the second complaint was so close to parties to the first" that second action was barred); *Somerville House Management, Ltd. v. Arts & Entertainment Television Network*, 1993 WL 138736, at *3 (S.D.N.Y. Apr. 28, 1993) (finding that where plaintiff had prior opportunity to raise all claims related to the disputed transaction and the same conspiracy was alleged in both actions, res judicata applied); *McLaughlin v. Bradlee*, 599 F. Supp. 839, 847–48 (D.D.C. 1984) (defendants may "defensively assert claim preclusion against [plaintiff] even though none of the prior suits named all six of them as defendants," primarily because only one conspiracy was alleged in the two complaints), *aff'd*, 803 F.2d 1197 (D.C. Cir. 1986).

Thus, you should not have filed the Virginia action, and it should be promptly dismissed given it is precluded by the Southern District of New York's prior orders dismissing Papaya's claims. Moreover, you should be aware that courts impose sanctions on parties and their counsel in similar circumstances. *See, e.g., Collins v. Walden*, 834 F. 2d 961, 963 (11th Cir. 1987) (affirming award of Rule 11 sanctions against attorneys who brought second action, even though original action alleging same conspiracy has been dismissed for failure to state cognizable claim); *Cook v. Peter Kiewit Sons Co.*, 775 F. 2d 1030, 1036 (9th Cir. 1985) (affirming award of Rule 11 sanctions where plaintiff re-filed previously dismissed claims and holding this was not justified by the addition of new defendants); *J. Walter Thompson Puerto Rico, Inc. v. Latin Am. Music Co., Inc.*, 355 F. Supp. 3d 110, 118 (D.P.R. 2019) (awarding sanctions under Federal Rule of Civil Procedure 11(c) and 28 U.S.C. § 1927 for "[r]elitigating issues already disposed of in prior actions"); *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 139-43 (S.D.N.Y. 2005), *aff'd sub nom. Smith v. The Educ. People, Inc.*, No. 05-2971-CV(L), 2008 WL 749564 (2d Cir. Mar. 20, 2008) (holding Rule 11 sanctions warranted where plaintiff filed action asserting previously dismissed claims against the vendors of the defendant in the original suit).

**2.      The Virginia Complaint is Substantively Meritless for the Same Reasons the Southern District of New York Dismissed Papaya's Claims**

Even putting aside the procedural impropriety, the Virginia action is substantively meritless for the same reasons that the Southern District of New York dismissed Papaya's claims. As that court explained: "Papaya has failed to sufficiently allege that the challenged statements were false." Ex. 1 at 19; *see also id.* at 19-24 (explaining why the graphics and content of the Fair Play's website were not actionable given they were not false).

March 31, 2025
Page 4

Similarly, in denying Papaya's motion for leave to amend because the proposed amendments were "futile," the New York court explained:

> The issue of the integrity of Papaya's business practices and its deception of the public about its historic use of bots to compete with customers in its games of "skill" are at the heart of this case. Papaya does not deny such undisclosed historic use in its PSAC or otherwise in this litigation. ***In recent depositions, none of Papaya's individual deposition witnesses denied the historic use of bots, as they all asserted their Fifth Amendment rights against self-incrimination rather than testifying to any potentially disputed facts.*** Therefore, Papaya will not be in a position to prove the falsity of the supposedly defamatory statement at trial.

Ex. 2. at 13-14 (emphasis added).

Notably, the Virginia complaint still does not dispute that Papaya used bots. This is fatal to Papaya's claims, as the New York court has repeatedly explained. Thus, Papaya's claims in the complaint that you signed are not warranted by law in violation of Federal Rule of Civil Procedure 11(b)(2). Additionally, given that Papaya's personnel have asserted Fifth Amendment rights against self-incrimination rather than testify regarding whether Papaya used bots, you should know that Papaya's claims are lacking in evidentiary support or likely evidentiary support in violation of Federal Rule of Civil Procedure 11(b)(3).

What is more, Papaya's defamation claim is time-barred under the applicable statute of limitations. The statute of limitations for defamation in Virginia is one year after accrual. Virginia Code § 8.01-247.1. The one-year statute "begins to run from the date of publication." *Shomo v. Napa Mgmt. Servs. Corp.*, 2022 WL 17477066, at *5 (E.D. Va. Dec. 6, 2022); *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 914 (E.D. Va. 2004) ("in Virginia, a tortious cause of action arises on the date the injury is sustained, or, in the case of a defamation cause of action, on the date of publication."). Here, Papaya's Complaint alleges that Fair Play's website was active "from approximately September 2023 through at least late February 2024," Compl. ¶ 45, and that the site's contents were "substantially similar from the date of the first archive (November 7, 2023) through the remainder of its existence" and provides citations to the version of the site archived February 28, 2024. Compl. ¶ 45 n. 7. "Publication" therefore accrued November 7, 2023—and even if some statements Papaya relies upon were subsequently added, those statements were unquestionably in place by February 28, 2024 according to Papaya's Complaint. Papaya's Complaint was not filed until March 14, 2025. Accordingly, from the face of the Complaint, the defamation claim is time-barred.

**3.**     **Papaya is Not Entitled to Expedited Discovery in the Virginia Action**

As explained above, you should not have filed the Virginia action, and it should be promptly dismissed. Given the case should not exist, Papaya should not receive any discovery in the Virginia action, much less the expedited discovery that you requested we agree to. For this reason and others, we plan to oppose your proposed motion for expedited discovery should you still desire to proceed down that path despite our warnings in this letter.

March 31, 2025
Page 5

Our clients reserve all rights and remedies.

Sincerely,

Jordan McCrary

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :    24cv1646(DLC)
SKILLZ PLATFORM INC.,                  :
                                       :    Opinion and
                          Plaintiff, :        Order
                                       :
          -v-                          :
                                       :
PAPAYA GAMING, LTD., et al.,           :
                                       :
                         Defendants. :
                                       :
-------------------------------------- X
                                       :
PAPAYA GAMING, LTD., et al.,           :
                                       :
          Counterclaim Plaintiffs, :
                                       :
          -v-                          :
                                       :
SKILLZ PLATFORM INC.,                  :
                                       :
          Counterclaim Defendant, :
                                       :
          and                          :
                                       :
TETHER STUDIOS LLC, et al.,            :
                                       :
   Additional Counterclaim Defendants. :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiff Skillz Platform Inc.:
Craig Carpenito
Amy Katherine Nemetz
Jessica C. Benvenisty
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Lazar Pol Raynal
Michael Anthony Lombardo
King & Spalding
110 N Wacker Drive, Suite 3800

Chicago, IL 60606

For defendants Papaya Gaming, Ltd., et al.:
Anthony Joseph Dreyer
Jordan Adam Feirman
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001-8602

David B. Leland
Margaret E. Krawiec
Michael A. McIntosh
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005

DENISE COTE, District Judge:

Skillz Platform Inc. ("Skillz") sued its competitor, Papaya
Gaming, Ltd. and Papaya Gaming, Inc. (collectively, "Papaya"),
alleging violations of the Lanham Act, 15 U.S.C. § 1125, and the
New York General Business Law ("GBL"), § 349, through false
advertising.  Papaya brings several counterclaims against
Skillz, first alleging that Skillz violated the Lanham Act and
GBL § 349 by falsely advertising various aspects of its own
games and making false claims about its competitors' games.
Papaya also alleges defamation and civil conspiracy, and that
Skillz and two other companies infringed on Papaya's trademarks
and copyrights by copying elements of its games.  Skillz has
moved to dismiss Papaya's counterclaims in their entirety.  It
has also moved, in the alternative to dismissal, for severance
of Papaya's trademark and copyright counterclaims.

2

For the following reasons, Skillz's motion to dismiss is granted in part.  Additionally, Skillz's motion to sever Papaya's trademark and copyright counterclaims is granted.

## **Background**

The following facts are taken from the First Amended Counterclaims ("FAC").  Only the facts necessary to decide the motion are included.  They are assumed to be true for the purpose of this motion, and all reasonable inferences are drawn in the counterclaim-plaintiffs' favor.

Papaya is a developer of mobile, multiplayer games that allow users to deposit money and earn real cash prizes, along with in-game currency.  In a game, users typically compete with between five and twenty opponents for the highest score.  Using an algorithm, Papaya arranges games by matching users of similar skill, as measured by each player's performance in prior games.

Skillz operates a mobile gaming platform in competition with Papaya.  The platform hosts games created by third-party developers, including two named as counterclaim-defendants: Tether Studios LLC ("Tether") and Golden Wood Company, Ltd. ("Golden Wood").  Skillz's games involve only head-to-head gameplay, as opposed to games involving more than two players.

A.    Skillz's Claims About Fairness

In various ways, Skillz markets its games as being uniquely fair and trustworthy.  On its apps, it presents a badge indicating it is "Committed to Fair Play" and will "[m]atch [users] with real players of equal skill" in its games.  On social media, Skillz has promoted its "unwavering assurance of fairness," including its promise to "NEVER EVER employ bots" and "guarantee that every match you engage in is a true reflection of your skill level."  In a 2024 "letter to our community," Skillz CEO Andrew Paradise made similar claims, noting the company was "committed to rooting out and eradicating cheaters, bad players, and bots," and that its games would include "No unfair bots, not ever."  The letter said that Skillz used a "proprietary technology to ensure fair matching," so that users could be "sure the competition is real, and so are your chances of winning."  Skillz's website, social media feeds, and marketing of individual games repeated much the same claims about "pair[ing] players with similar skill levels," having "a fair chance to win," and the games' lack of bots.  Paradise also made these statements on earnings calls with investors, emphasizing that Skillz "stands alone" in committing to "fair play for skill-based gaming."

4

B.   Skillz's Operation of Games

Despite its representations, according to the FAC, Skillz has used and allowed the use of bots in its games, and it has unevenly matched players.  Skillz has clarified that it uses bots only in certain non-cash games and in games where two human players compete asynchronously.  In addition to permitting the use of bots on its platform, former Skillz employees say that the company sometimes manipulates the outcomes of games by unevenly matching players.

The way in which Skillz characterizes and operates games on its platform affects Papaya in a few ways.  Because of some players' experience with Skillz's games, they come to believe that all mobile gaming is rigged and stop using other games, like Papaya's.  Some confuse the two platforms and attribute the unfairness of Skillz's games to Papaya.  And if not for Skillz's claims about the fairness of its games, some players may have played Papaya's games instead of Skillz's.

C.   Cash Withdrawals

In its marketing to consumers, Skillz claims that they can withdraw cash that they win on its platform "at any time."  It has made this claim in video advertisements, as well as on the "Support" page of its website.  But some players have complained online and in reviews of Skillz's platform that they were unable

5

to withdraw money from their accounts when they attempted to do so.  In some cases, players were unable to access their winnings because their accounts had been banned from the platform.

D.   Claims About Papaya and Other Gaming Companies

According to the FAC, Skillz has embarked on a public-facing campaign to smear competitors like Papaya to position itself as fairer and more trustworthy than other mobile gaming companies.  It has done so in two ways: first, by creating an organization that accuses Skillz's competitors of using bots in its games, and, second, by planting and disseminating an article that stated Papaya had admitted to using bots in its games.  Skillz's claims about Papaya have tarnished Papaya's reputation and that of the mobile gaming industry generally, and, in their absence, some users may have played Papaya's games instead of Skillz's.

1.   4FairPlay Organization and Website

First, Skillz created a "false-front" organization called "Fair Play for Mobile Games" or "4FairPlay", which maintained a public website from September 2023 to February 2024.  Skillz funded the organization and controlled and assisted it.  Skillz, through its CEO Andrew Paradise, also provided specific direction on the design of its website.

6

The 4FairPlay website encouraged and facilitated visitors' filing of complaints about mobile gaming companies, other than Skillz and including Papaya, with state attorneys general.  One page titled "File a Complaint," for example, provided a pre-filled form for users to submit a complaint against either Papaya or one of two other companies, but not Skillz, to state law enforcement.

The website's home page included a banner showing a counter that purported to display an increasing number of complaints filed with state law enforcement about Papaya and two other companies.  That counter did not display an accurate number of complaints; in fact, each time a visitor arrived at the website, it would display the same number.  The number would appear to increase every few seconds, which gave the false impression that it was incorporating accurate, live updates.  The page also encouraged visitors to file a complaint, noting that "thousands of players" were doing so.

The 4FairPlay homepage also displayed a pie chart purporting to show the relative number of complaints relating to various games offered by Papaya and other companies.  Above the graph appeared the sentence: "Bingo Cash and Solitaire Cash by Papaya Games have received the highest complaints so far followed by Solitaire Cash from Avia Games."  The figures

7

displayed in the graph, which remained static, did not reflect in real time any actual database of complaints being continuously updated.  The homepage also presented a map of the United States, purporting to show the number of complaints submitted from each state.  Like the graph, the map's data stayed the same over time and were not connected to any live database.

       2.   Bonus.com Article

On June 25, 2024, Skillz posted a link to an article on the website Bonus.com to its social media accounts ("Bonus.com article").  Skillz had been involved in creating the article, which was titled "Papaya Gaming Admits Bot Use, Claims No Deception."  Skillz's social media posts thanked Bonus.com for "covering this story," stated that "[f]raud is fraud," and made similar statements decrying bot use in the mobile gaming industry.

The article referred to this litigation, and portrayed Papaya as having "admitted" to using bots in the course of defending itself from Skillz's lawsuit, despite Papaya's counsel's statement at a May 10 conference that Papaya's platform does not use bots.[1]  Bonus.com ultimately retracted the

---

[1] At the May 10 conference, Papaya's counsel stated that "the games as currently constituted do not use bots.  Every single opponent is a human opponent."

article's statement that Papaya had admitted to using bots and issued a correction, but Skillz did not remove its social media posts referencing the article and the claims it initially made.

E.   Papaya's Intellectual Property on Skillz's Platform

According to the FAC, another aspect of Skillz's unfair competition with Papaya is its misappropriation of intellectual property in Papaya's games.  Several of Papaya's games, particularly SOLITAIRE CASH, BINGO CASH, and 21 CASH, have accrued substantial popularity and brand recognition with the game-playing public.  These similarities between Skillz's games and Papaya's have caused confusion among consumers, who may think that Skillz's games are associated with Papaya and in some cases blame Papaya for deficiencies in games that are actually hosted by Skillz.

1.   Papaya's Intellectual Property

In SOLITAIRE CASH, players win points by clearing cards from the game board and creating sequences of cards in descending order.  In BINGO CASH, players try to win the most points by marking, or "daubing," certain numbers on the game board as fast as possible.  And in 21 CASH, players create stacks of cards adding up to 21, out of a deck of 52 cards, within a given time limit.

These games have all been offered for several years, during which they have been played by millions of people and garnered hundreds of thousands of reviews.  Users associate these games with their names and logos.  Accordingly, Papaya has a federal trademark registration for each of the games' names and logos or icons.  And additional artistic expression within the BINGO CASH game, such as play screens, game boards, and other elements of the user interface, is the subject of a copyright registration.

      2.   Games on Skillz's Platform

After Papaya released these games, however, several games with similar names and imagery appeared on Skillz's platform.  First, in June 2023, the Skillz platform began hosting a game developed by Tether called CASH OUT BINGO.  Like BINGO CASH's logo, CASH OUT BINGO's logo features the word "BINGO" above three colored bingo balls.  In both logos, the center ball includes a dollar sign in a white circle, while two other balls with numbers in white circles appear behind it.  In addition, the CASH OUT BINGO user interface resembles that of BINGO CASH, including the use of a dark blue star against a lighter blue square for the bingo board's center, a blue pill-shaped "Bingo" button, a similarly shaped and situated set of meters to display bonuses, and similar or identical names and icons for types of bonuses (such as "Wild Daub" or "Pick-A-Ball").

Second, BINGO FOR CASH was developed by Golden Wood, released on Skillz's platform in May 2024, and also resembles Papaya's BINGO CASH game.  Both games' interfaces have a purple background, use yellow stars for daubed numbers, highlight certain numbers in light blue, and use a similar "Bingo" banner in which each letter appears in its own pill-shaped frame colored red, yellow, purple, green, and blue, respectively.

Third, 21 BASH, which was developed by Luckyo Limited and was released in May 2023, resembles Papaya's 21 CASH in its name and logo.  Both games' icons prominently feature the number "21" in a gold font against a purple background.  Both icons also feature illustrations of playing cards, including an Ace and a Jack.

Fourth, SOLITAIRE WORLD - WIN CASH was developed by GameNexa Studios and released in 2023.  Its icon resembles that of Papaya's SOLITAIRE CASH.  Both icons show illustrations of three cards, similarly spread against a green background, where the front card displays dollar signs and a gold border, and the two cards behind it appear to be more traditionally colored white playing cards.

Fifth, a game developed by DNR Game Studio and released in 2024, is called SOLITAIRE CASH, but has been listed on app stores with longer names including "SOLITAIRE CASH - JUST PLAY

NOW" and "SOLITAIRE CASH: WIN REAL MONEY."  This game has the same name as Papaya's SOLITAIRE CASH.

Finally, as of the FAC's filing, Skillz was planning to offer a game called "21 CASH BLITZ - WIN CASH," developed by DNR Game Studio, beginning in October 2024.  The icon for the game includes only the words "21 CASH," such that the game's title appears to be identical to that of Papaya's 21 CASH.

F.   Lawsuit

Skillz initiated this action against Papaya on March 4, 2024.  Papaya moved to dismiss the claims against it on May 6, and that motion was denied in its entirety on July 23.  Skillz Platform Inc. v. Papaya Gaming, Ltd., No. 24cv1646, 2024 WL 3526853 (S.D.N.Y. July 23, 2024).  On August 5, Papaya filed an Answer to the Complaint, as well as counterclaims against Skillz and five other companies.  On September 4, Skillz moved to dismiss and/or sever the counterclaims.

Following an initial pretrial conference on September 6, an Order of the same day set forth a schedule for discovery and other pretrial proceedings in this case.  Fact discovery in the underlying action against Papaya is about to conclude.  On September 23, Papaya filed the FAC, mooting Skillz's September 4 motion.  The FAC named only Skillz, Tether, and Golden Wood as counterclaim-defendants.  Tether filed an Answer on October 7.

On October 11, Skillz renewed its motion to dismiss or, in the alternative, sever certain counterclaims.  The motion was fully submitted on November 15.

## Discussion

Papaya brings ten counterclaims against Skillz.  In its first two claims, the FAC alleges false advertising and deceptive practices under the Lanham Act and GBL § 349, respectively.  In its next two claims, the FAC alleges defamation and civil conspiracy to unlawfully harm Papaya under New York common law.  Next, the FAC alleges trademark infringement and contributory and/or vicarious trademark infringement in violation of 15 U.S.C. § 1114; false designation of origin, false association, and/or unfair competition, and contributorily and/or vicariously doing the same, pursuant to 15 U.S.C. ¶ 1125(a); and copyright infringement and contributory and/or vicarious copyright infringement under 17 U.S.C. § 501 ("trademark and copyright claims").

Skillz has moved to dismiss all of Papaya's counterclaims for failure to state a claim for relief pursuant to Rule 12(b)(6), Fed. R. Civ. P.  In the alternative, Skillz argues, Papaya's six trademark and copyright counterclaims should be severed.

To survive a motion to dismiss brought under Fed. R. Civ.
P. 12(b)(6), "a complaint must contain sufficient factual
matter, accepted as true, to state a claim to relief that is
plausible on its face." Doe v. Franklin Square Union Free Sch.
Dist., 10 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Vengalattore
v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting
Ashcroft, 556 U.S. at 678). "In determining if a claim is
sufficiently plausible to withstand dismissal, a court 'must
accept as true all allegations in the complaint and draw all
reasonable inferences in favor of the non-moving party.'" Doe,
100 F.4th at 94 (citation omitted).

I.   Lanham Act and GBL § 349

Papaya alleges that Skillz violated the Lanham Act and GBL
§ 349 by falsely advertising its own products, including by
claiming that its games did not include bots, that it matches
players evenly, and that it allows users to withdraw cash at any
time.  Papaya also alleges that Skillz made false statements
about the fairness of games offered by Papaya and other
competitors.  Skillz argues primarily that the FAC fails to

14

state these claims because it does not plausibly allege the challenged statements were false.  For the following reasons, Skillz's motion is denied with respect to claims arising from Skillz's claims about its own products, but granted to the extent counterclaims allege violations based on Skillz's claims about its competitors.

Under Section 43(a) of the Lanham Act, any person who, on or in connection with any goods or services, uses any

> false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  To state a claim under this provision, the plaintiff must allege (a) "the falsity of the challenged statement," (b) "materiality, i.e, that the false or misleading representations involved an inherent or material quality of the product," (c) "that the defendant placed the false or misleading statement in interstate commerce," and (d) "that the plaintiff has been injured as a result of the misrepresentation."  Int'l Code Council, Inc. v. UpCodes Inc., 43 F.4th 46, 56 (2d Cir. 2022) (citation omitted).

"A plaintiff can demonstrate falsity either by showing: (1) literal falsity, i.e., that the challenged advertisement is

false on its face, or (2) implied falsity, i.e., that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." Id. at 57 (citation omitted). "[A]n impliedly false message leaves an impression on the listener or viewer that conflicts with reality," and need not necessarily imply something that is literally false. Id. (citation omitted). A statement's materiality depends on whether it is "likely to influence purchasing decisions." Id. at 63 (citation omitted).

Similarly, a GBL § 349 claim must "allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted). The Second Circuit has noted that these elements resemble those of a Lanham Act false advertising claim, and neither party suggests the laws differ in any way that is material to the instant motion. See UpCodes Inc., 43 F.4th at 56 n.3.

A.   Skillz's Statements About Its Own Games

First, Papaya sufficiently alleges that Skillz violated the Lanham Act and GBL § 349 by falsely stating that games on its platforms did not use bots, matched players evenly, and allowed

16

users to withdraw funds at any time.  According to the FAC,
Skillz claimed in various contexts that its games never involve
bots and that they ensure players are paired with other players
of similar skill level.  It alleges that those claims are false,
in that Skillz games did use bots in some contexts and that they
manipulated the outcomes of games by matching players in a way
that ensured a certain result.  The FAC plausibly alleges that
the challenged representations were material, evidenced in part
by customer reviews implying that Skillz's users participated in
its games because they thought they would be fairly matched
against a human.  Papaya alleges that these statements have
injured it by attracting potential Papaya customers to Skillz,
and by creating confusion that has hurt Papaya's reputation.
And there is no dispute that the challenged statements were
placed in interstate commerce.

Skillz argues to the contrary that Papaya has no factual
support for its allegations that Skillz used bots or unevenly
matched players.  These claims are governed by Rule 8's pleading
standards.  To plead plausible claims, Papaya cites to Skillz
documentation that refers to the use of bots.  And the FAC
refers to language used internally at Skillz, which, construed
in the light most favorable to Papaya, could suggest that Skillz
was manipulating the outcomes of games by unevenly matching

17

players.  Skillz responds that bot usage in a narrow set of
circumstances, such as in training games, is immaterial to
consumers.  But the FAC does not allege that Skillz used bots
only in training games.  And, in any event, whether the presence
of bots in certain narrow contexts is immaterial to consumers
raises questions of fact.  See UpCodes Inc., 43 F.4th at 64.
Papaya plausibly alleges that Skillz's claims that it never uses
bots affect consumers' decisions to use the platform.

With respect to the claims that users could withdraw cash
at any time, Skillz argues that the challenged statements were
not false when viewed in context, including that the Skillz's
website included an article called "why does it take 4-6 weeks
to get my withdrawal."  While, "under certain circumstances, the
presence of a disclaimer or similar clarifying language may
defeat a claim of deception," Fink v. Time Warner Cable, 714
F.3d 739, 742 (2d Cir. 2013), to warrant dismissal at this stage
of the litigation the disclaimer should be located near the
challenged language and "so clear that no reasonable addressee
could believe the plaintiffs' allegations of being misled."
UpCodes Inc., 43 F.4th at 63.  This is not such a case, as the
FAC alleges that Skillz made the challenged claims in video
advertisements and on another page of its website.

18

B.   Skillz's Statements About Its Competitors

Skillz has also moved to dismiss Papaya's Lanham Act and
GBL § 349 claims based on Skillz's statements about Papaya and
other competitors.  According to the FAC, Skillz implied through
the graphics and content on the 4FairPlay website that its
competitors, including Papaya, have been the subjects of many
consumer complaints related to the use of bots and unfair games,
while Skillz has not.  Skillz argues that Papaya has failed to
sufficiently allege that the challenged statements were false.
Skillz is correct.

As in initial matter, Papaya does not allege that the
4FairPlay website is "literally false."  Id. at 57.  "A message
can only be literally false if it is unambiguous."  Id.
(citation omitted).  And "a district court evaluating whether an
advertisement is literally false must analyze the message
conveyed in full context, i.e., it must consider the
advertisement in its entirety and not engage in disputatious
dissection."  Id. (citation omitted).  Papaya's allegations are
essentially that the website's graphics caused consumers to be
confused.  The FAC's assertion that the website's complaint
counter "created a false sense of specificity and legitimacy,"
for example, is not a claim that it was unambiguous or that it
necessarily implied a constantly updated connection to live

19

database.  Similarly, the claims that other companies are
"scams" or "fraudulent" do not necessarily and ambiguously imply
a false message, because those words are not susceptible to a
single clear, widely agreed-upon definition.  Apotex Inc. v.
Acorda Therapeutics, Inc., 823 F.3d 51, 63 (2d Cir. 2016).
Where "the language or graphic is susceptible to more than one
reasonable interpretation, the advertisement cannot be literally
false."  Id. (citation omitted).

   To the extent Papaya's allegation is that the website was
impliedly false, it has failed to "plead sufficient facts to
support a finding that consumers were confused or misled," as is
necessary to challenge "a statement that is not literally
false."  UpCodes Inc., 43 F.4th at 64 n.10.  This sort of
allegation is "usually demonstrated through extrinsic evidence
of consumer confusion or through evidence of the defendant's
deliberate deception."  Id. at 57 (citation omitted).  Here, the
FAC does not allege any such facts, but offers only the
conclusion that "a reasonable consumer . . . would have been
deceived" by the website and that the website included "false
and misleading statements."  Even at this early stage, a claim
cannot survive based on "threadbare recitals of a cause of
action's elements, supported by mere conclusory statements."
Iqbal, 556 U.S. at 663.

20

Papaya highlights three aspects of the 4FairPlay website aside from the consumer complaint graphics that it says amounted to false advertising: Skillz's hiding its involvement to "give the impression" that 4FairPlay was unbiased, the "design" of the website suggesting its impartiality, and the website's omission of Skillz as an option for the subject of complaints.  But these accusations do not identify "any description of fact," 15 U.S.C. § 1125(a)(1), or statement about a product or service, much less a false one.[2]  Accordingly, Papaya's Lanham Act and § 349 claims regarding the 4FairPlay website are dismissed.

## II.  Defamation

Under New York law, a defamation claim must include:

> 1) a written defamatory statement of fact concerning the plaintiff; 2) publication to a third party; 3) fault (either negligence or actual malice depending on the status of the libeled party); 4) falsity of the defamatory statement; and 5) special damages or per se actionability (defamatory on its face).

Electra v. 59 Murray Enters., Inc., 987 F.3d 233, 259 (2d Cir. 2021) (citation omitted).  Papaya claims that Skillz defamed it

---

[2] Papaya also posits that Skillz's motion regarding these claims could be rejected solely on the basis of its brief's referencing only defamation law to support it.  That is not quite true; Skillz argues in its brief that Papaya has not pleaded falsity under the Lanham Act or GBL § 349.  And, importantly, the three causes of action share the requirement of falsity.  See ONY, Inc. v. Cornerstone Therapeutics, Inc., 720 F.3d 490, 492 (2d Cir. 2013) (referring to Lanham Act and GBL § 349 claims as "sounding in defamation").

through two sets of public communications: first, various representations on the 4FairPlay website regarding consumers' complaints about Papaya's games, and second, the Bonus.com article that said Papaya had admitted to bot use, which the FAC alleges Skillz created and disseminated.

A.   4FairPlay Website

Papaya first alleges that the 4FairPlay website's various representations indicating that Papaya had been the subject of consumer complaints were defamatory.  Skillz argues that Papaya has not sufficiently alleged that those statements were false in the sense required to state a defamation claim.  Skillz is correct.

To state the falsity element of a defamation claim, the complaint "must plead facts that, if proven, would establish that the defendant's statements were not substantially true." Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 247 (2d Cir. 2017).  "A statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." Id. at 242 (citation omitted).  Under this definition, which is meant to avoid an "overly technical or exacting conception of truth," "the entire publication, as well as the circumstances of

22

its issuance, must be considered in terms of its effect upon the ordinary reader."  Id. at 243 (citation omitted).

The FAC fails to plead that the complaint counter, pie graph, and map were not substantially true.  For instance, the FAC does not allege that multiple consumers had not complained about Papaya, or that the complaints about Papaya were not increasing over time.[3]

Papaya argues, and the FAC asserts in conclusory fashion, that the counter falsely gave the impression that these statistics were connected to some live database, which imparted a "false sense of legitimacy and impartiality."  This parsing of the website's graphic misses the thrust of its presentation, which urges viewers to join a growing list of complainants.

Papaya also notes that other statements on the 4FairPlay website -- about "fraudulent games" and "scams" -- can support its defamation claim.  This argument fails as well.  "New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'  Chau v. Lewis, 771 F.3d 118, 128 (2d Cir. 2014).  And "statements more likely to be characterized as fact are readily understood by the reader to have a precise, unambiguous and definite meaning and can be

---

[3] Skillz's motion is supported by a spreadsheet of complaints against Papaya.  Papaya is correct these complaints cannot properly be considered on a motion to dismiss.

objectively characterized as true or false." Id.  Reference to

a game as a "scam" or "fraudulent" may be harsh, but those words

lack a precise and definite meaning that would allow them to

support a defamation claim.  Various other alleged aspects of

the website, such as the solicitation of complaints against

Papaya but not against Skillz, likewise are not factual

statements.

    B.  Bonus.com article

    Papaya also alleges that Skillz defamed it by creating and

sharing the June 2024 Bonus.com article, whose headline stated

that Papaya "Admits Bot Use."  Skillz argues in support of its

motion that the challenged statement is protected by New York's

fair and true report privilege.  Papaya responds primarily that

the statement is not covered by that privilege because it is not

true.  Skillz's argument prevails.

    Under New York Law, a "civil action cannot be maintained

against any person, firm or corporation, for the publication of

a fair and true report of any judicial proceeding." Kinsey v.

N.Y. Times Co., 991 F.3d 171, 178 (2d Cir. 2021) (quoting N.Y.

Civ. Rts. L. § 74).  A statement is "a fair and true report if

it is substantially accurate, that is if, despite minor

inaccuracies, it does not produce a different effect on a reader

than would a report containing the precise truth."  Id.

(citation omitted).  For the privilege to apply, "the ordinary
viewer or reader" must be able to determine the publication at
issue is "reporting on a judicial proceeding."  Id. at 179
(citation omitted).  Still, New York courts adopt a liberal
interpretation" of this privilege "and will not review the
challenged language of the headline and article with a
lexicographer's precision."  Id. (citation omitted).

Skillz is correct that the fair and true report privilege
applies.  Based on the FAC, the Bonus.com article was about this
litigation -- a judicial proceeding.[4]  And the challenged
headline was "substantially true."  In a May 10 conference,
Papaya's counsel stated that "at the pleading stage, we have not
denied the use of bots" and that Papaya's games "as currently
constituted do not use bots."  Papaya's May 6 brief in support
of its motion to dismiss Skillz's claims against it stated:
"Papaya does not represent that its games never include
computerized opponents" and "Papaya has not denied or refuted
that it deployed bots."  Even if the Bonus.com headline may have
been more accurate in saying that Papaya "has not denied or
refuted that it deployed bots," defamation does law does not

---

[4] Papaya first argues that the Bonus.com is not a report on a
judicial proceeding at all.  In support of that argument it
notes its allegation that Skillz was involved in creating the
post.  But it supplies no authority or explanation establishing
why that fact would mean the privilege does not apply.

require maximal accuracy, and Papaya does not plausibly allege that such a characterization would have a different effect on readers than that of what the headline actually said. Particularly in a headline -- an especially "condensed report of events," id. at 179 (citation omitted) -- New York law does not require the level of precision that Papaya's arguments imply. Papaya posits that its May 2024 brief was only restating Skillz's allegations, but that is clearly not the case. Skillz's allegation was that Papaya did deny the use of bots.

The FAC also points to statements Skillz made not in the Bonus.com article itself but in its social media posts sharing the article.  It asserts that Skillz disseminated social media posts falsely accusing Papaya of being a "scam" and a "fraud." But these statements lack the kind of precise, unambiguous meaning that make them actionable as statements of fact.

III. Civil Conspiracy

Skillz makes no arguments with respect to Papaya's civil conspiracy claim in its opening brief, and its reply brief states that it should be dismissed for the same reasons Papaya's Lanham Act, GBL, and defamation claims should be dismissed. Accordingly, Skillz's motion to dismiss the civil conspiracy counterclaim is denied to the extent it arises out of the Lanham Act and GBL § 349 claims that are not dismissed.

26

IV.  Trademark and Copyright Claims

Papaya has brought a series of counterclaims alleging that Skillz and two other companies violated trademark and copyright law by imitating certain elements of Papaya's games.  Skillz moves to dismiss these counterclaims.  For the following reasons, that motion is granted in part.

A.  Trademark Claims

To state a trademark infringement claim, "the plaintiff must show first, that its mark is protected, and second, that the defendant's use in commerce of the allegedly infringing mark would likely cause confusion as to the origin, sponsorship, or affiliation of the defendant's goods with plaintiff's goods." 1-800 Contacts, Inc. v. JAND, Inc., 119 F.4th 234, 246 (2d Cir. 2024) (citation omitted).

Papaya alleges that Skillz violated the Lanham Act by using game names and logos that resembled game names ("word marks") and logos ("logo marks") that Papaya had registered as trademarks.  According to the FAC, this resemblance would cause consumers to confuse Papaya's games with Skillz's games.  Skillz makes two arguments in support of its motion to dismiss the trademark claims: first, that Papaya's trademarks are not protectible, and, second, that Papaya has not sufficiently alleged consumer confusion.  Both of those arguments fail with

27

respect to Papaya's logos.  The motion to dismiss Papaya's trademark claims premised on Papaya's word marks is granted.

     1.   Secondary Meaning

Skillz moves to dismiss Papaya's trademark counterclaims first by arguing that Papaya's logo and word marks -- "BINGO CASH," "21 CASH," and "SOLITAIRE CASH" -- are not descriptive because they lack secondary meaning.  Papaya responds that it has alleged longstanding, continuous use of the names and logos, which represent popular games that have been downloaded many times, which is enough to state a claim at this stage.  Papaya is correct with respect to the logo marks, but not the word marks.

Descriptive marks, which are at issue here,[5] are protected only if they have acquired "secondary meaning," such that "the mark's primary significance to relevant consumers is to identify the trademark holder as the source of the product." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 160 (2d Cir. 2016) (citation omitted).  Even so, a mark's registration on the U.S. Patent and Trademark Office's Principal Register "is prima facie evidence of the validity of the registered mark." Matal v. Tam, 582 U.S. 218, 226 (2017).

---

[5] Papaya appears to accept Skillz's characterization of the trademarks at issue as descriptive.

28

A mark has secondary meaning when, in the mind of consumer, "the primary significance" of a product feature "is to identify the source of the product rather than the product itself." Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 226 (2d Cir. 2012) (citation omitted).  The "crucial" question is thus "whether the public is moved in any degree to buy an article because of its source."  Id. (citation omitted).

> Factors that are relevant in determining secondary meaning include (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use.

Id. (citation omitted).  "Whether a mark has acquired distinctiveness is an inherently factual inquiry."  Id. (citation omitted).

Papaya has sufficiently alleged that its logos have secondary meaning.  Unlike the name marks, the logo marks are on the Principal Register.  The logos are pictured in the FAC, and it pleads that the relevant games associated with those logos have been publicly available for several years and that they have been downloaded by millions of people and positively reviewed by hundreds of thousands.  It also alleges that other companies have used the same or similar logos in their games, which may support an inference of distinctiveness.  Given the

29

fact-intensive nature of determining secondary meaning, Papaya's logos cannot be denied trademark protection as a matter of law.

The motion to dismiss is granted with respect to the word marks. Papaya's supplemental trademark registration for the word marks disclaims use of any particular font style, size, or color in connection with the words. The FAC does not explain how the word marks are presented to consumers. It provides no facts to support a claim that the word marks, by themselves, have become identifiers of the source of the games.

### 2. Consumer Confusion

Papaya alleges that Skillz's use of similar logos for its games confuse consumers into thinking that Skillz's games are actually offered by Papaya. Skillz moves to dismiss Papaya's trademark claims on the basis that its allegations of consumer confusion are implausible. This argument fails as well.

To analyze consumer confusion, courts in this Circuit apply the eight-factor test set forth in <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961). Those factors are:

> (1) strength of the trademark; (2) similarity between the two marks; (3) proximity of the products and their competitiveness with one another; (4) likelihood the prior owner may 'bridge the gap' in the markets for their products; (5) evidence of actual consumer confusion; (6) the defendant's good faith in adopting its imitative mark; (7) quality of the defendant's

30

product compared with the plaintiff's product; and (8)
sophistication of the buyers.

1-800 Contacts, Inc., 119 F.4th at 247 (citation omitted).  "No
single factor is dispositive, nor is a court limited to
consideration of only these factors."  Id. (citation omitted).
"The likelihood of confusion is a fact-intensive analysis that
ordinarily does not lend itself to a motion for judgment on the
pleadings," but implausible claims of confusion may be
dismissed.  Id. at 255.

Papaya's allegations of consumer confusion are not
implausible.  Papaya's logos have a stylized word, a defined
background design, and a set shape.  The FAC alleges Papaya's
marks were in continuous and exclusive use for years, appended
to games with millions of users, such that they might have a
"tendency to uniquely identify the source of the product."  City
of New York v. Henriquez, 98 F.4th 402, 411 (2d Cir. 2024)
(citation omitted).  There is clearly substantial similarity
between the marks, as the logos use many of the same words,
colors, and symbols and position these components similarly with
respect to each other.  The parties' products are in close
competition and are offered in essentially the same market.  And
a factfinder could find that the similarities of the logos, and
Skillz's likely knowledge of them as a close competitor, imply a

31

degree of bad faith.  The FAC does not contain information about consumers' actual confusion or their sophistication.

Taking the <u>Polaroid</u> factors as a whole, Papaya has adequately alleged that consumers would be confused by Skillz's use of logos similar to the allegedly infringed marks.  Accordingly, Skillz's motion to dismiss the trademark claims based on the Papaya logos is denied.[6]

B.   Copyright Claims

Finally, Skillz alleges that, through the games CASH OUT BINGO and BINGO FOR CASH, Skillz unlawfully used copyrighted elements of Papaya's game BINGO CASH.  Skillz moves to dismiss these claims on the basis that copyright law does not protect elements of bingo games.  Skillz's motion is denied.

"To establish a claim of copyright infringement, a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's."  <u>Structured Asset Sales, LLC v. Sheeran</u>, 120 F.4th 1066, 1078 (2d Cir. 2024) (citation omitted).  "The standard

---

[6] Skillz makes no independent arguments regarding Papaya's claims of contributory and/or vicarious trademark infringement and of false designation of origin, false association, and/or unfair competition.

test for substantial similarity between two items is whether an
ordinary observer, unless he set out to detect the disparities,
would be disposed to overlook them, and regard the aesthetic
appeal as the same." Id. (citation omitted). "This test asks
whether an average lay observer would recognize the alleged copy
as having been appropriated from the copyrighted work." Id.
(citation omitted). When protectible and unprotectible elements
exist in the same work, courts "attempt to extract the
unprotectible elements from . . . consideration and ask whether
the protectible elements, standing alone, are substantially
similar." Id. at 1079 (citation omitted). Relatedly, "scenes a
faire, sequences of events that necessarily result from the
choice of a setting or situation, do not enjoy copyright
protection." Williams v. Crichton, 84 F.3d 581, 587 (2d Cir.
1996) (citation omitted).

Papaya has sufficiently alleged substantial similarity
between Papaya's BINGO CASH and Skillz's CASH OUT BINGO and
BINGO FOR CASH games. The parties appear to agree that elements
common to bingo-style games are not protectible, but they
disagree about whether substantial similarity between other
elements exists in the two games. The FAC plausibly sets forth
various elements of CASH OUT BINGO that a factfinder could
determine are substantially similar to those in BINGO CASH.

33

Those elements include a similarly colored and shaped "Bingo" button, similarly named and described bonus options ("Wild Daub", "Daub any number"), similar shapes and colors used for certain bingo squares, and similarly colored and shaped icons similarly arranged above the bingo board.  A motion to dismiss is not the appropriate vehicle to determine whether these elements are inherent parts of the unprotectible concept of bingo, or that they "necessarily result" from choosing to create a bingo game.  And whether a lay person would notice these similarities, even with any unprotectible context stripped away, is a question of fact that cannot be resolved at this stage. See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 111 (2d Cir. 2001) (explaining that, in testing substantial similarity, the "fact-finder must examine the works for their total concept and feel" (citation omitted)).

C. Severance

In the alternative to dismissal, Skillz moves to sever Papaya's trademark and copyright counterclaims.  That motion is granted.

Rule 21, Fed. R. Civ. P., states that "[t]he court may . . . sever any claim against a party."  "The decision whether to grant a severance motion is committed to the sound

discretion of the trial court."  New York v. Hendrickson Bros.,
Inc., 840 F.2d 1065, 1082 (2d Cir. 1988).

Skillz and Papaya have for the past several months been
engaged in active discovery that has primarily centered around
Skillz's claims against Papaya and Papaya's counterclaims that
bear on the companies' respective use of bots and other aspects
of their games allegedly inconsistent with their public
representations.  The parties are proceeding on a busy schedule
for fact and expert discovery, and in the not too distant future
will be briefing summary judgment and other pretrial motions.
This schedule was designed with Skillz's initial claims in mind.
Those initial claims, along with Papaya's counterclaims that to
some extent mirror them, have little to do with Papaya's
trademark and copyright claims.  Although they involve some of
the same products, they arise out of different occurrences and
raise different questions of law and fact.  They also involve
different parties; unlike the Lanham Act and GBL claims and
counterclaims, Papaya has named Tether and Golden Wood as
counterclaim defendants to the trademark and copyright
counterclaims.[7]  Resolving the trademark and copyright
counterclaims will likely require a different set of discovery

---

[7] Tether filed an Answer on October 7, 2024.  Golden Wood has not
appeared in this action.

materials, different considerations underlying any settlement
discussions, and different arguments, should the parties choose
to raise them, on summary judgment and other pretrial motions,
and at trial.  Neither party presents any compelling reason to
think it will be prejudiced by the severance of these claims.

For these reasons, severance is justified by the interest
in timely adjudicating Skillz's initial claims and Papaya's
related counterclaims, while preserving the parties' right to
conduct discovery regarding the copyright and trademark
counterclaims.  Papaya's primary argument to the contrary is
that severance will create inefficiencies by requiring the
parties to re-brief Rule 12 motions and serve redundant
disclosures and discovery requests.  Not so.  Skillz has already
moved to dismiss these claims, and this Opinion addresses that
motion.  To the extent any disclosures or productions that have
already taken place bear on the trademark and copyright claims,
those materials need not be produced again.

## Conclusion

Skillz's October 11, 2024 motion to dismiss Papaya's
counterclaims is granted in part.  Skillz's motion to sever
Papaya's trademark and copyright counterclaims is granted.  A

36

scheduling order accompanies this Opinion.

Dated:     New York, New York
           February 7, 2025

                                    _____
                                         DENISE COTE
                                  United States District Judge

# Exhibit 2

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :    24cv1646(DLC)
SKILLZ PLATFORM INC.,                  :
                                       :    Opinion and
                         Plaintiff,    :       Order
            -v-                        :
                                       :
PAPAYA GAMING, LTD., et al.,           :
                                       :
                         Defendants.   :
                                       :
--------------------------------------- X
                                       :
PAPAYA GAMING, LTD., et al.,           :
                                       :
            Counterclaim Plaintiffs,   :
                                       :
                 -v-                   :
                                       :
SKILLZ PLATFORM INC.,                  :
                                       :
            Counterclaim Defendant,    :
                                       :
                 and                   :
                                       :
GOLDEN WOOD COMPANY, LTD.,             :
                                       :
    Additional Counterclaim Defendant. :
                                       :
-------------------------------------- X
```

APPEARANCES:

For plaintiff Skillz Platform Inc.:
Craig Carpenito
Amy Katherine Nemetz
Jessica C. Benvenisty
King & Spalding
1185 Avenue of the Americas
New York, NY 10036

Lazar Pol Raynal
Michael Anthony Lombardo
King & Spalding
110 N Wacker Drive, Suite 3800

Chicago, IL 60606

For defendants Papaya Gaming, Ltd., et al.:
Anthony Joseph Dreyer
Jordan Adam Feirman
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001-8602

David B. Leland
Margaret E. Krawiec
Michael A. McIntosh
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005

DENISE COTE, District Judge:

Skillz Platform Inc. ("Skillz") sued its competitor, Papaya
Gaming, Ltd. and Papaya Gaming, Inc. (collectively, "Papaya"),
alleging violations of the Lanham Act, 15 U.S.C. § 1125, and the
New York General Business Law ("GBL"), § 349, through false
advertising. Papaya brought several counterclaims against
Skillz, alleging false advertising, defamation, civil
conspiracy, and copyright and trademark infringement. An
Opinion of February 7 granted in part Skillz's motion to dismiss
Papaya's First Amended Counterclaims ("FAC"). Skillz Platform
Inc. v. Papaya Gaming, Ltd., No. 24cv1646, 2025 WL 438387
(S.D.N.Y. Feb. 7, 2025) ("February 7 Opinion"). Papaya has now
moved for leave to file further amended counterclaims, attached
to its motion as Proposed Second Amended Counterclaims ("PSAC").
These proposed amendments chiefly try to resurrect the dismissed

2

counterclaims.  Skillz opposes the motion.  For the following
reasons, Papaya's motion is denied.

### Background

The following facts are taken from the PSAC, and, because
much of the discussion below evaluates its content by the
standard applicable to motions to dismiss pursuant to Rule
12(b)(6), Fed. R. Civ. P., those facts are assumed to be true.
Familiarity of the prior Opinions in this case, including the
February 7 Opinion, is assumed.  Only the facts necessary to
decide the present motion are included.

Papaya is a developer of mobile, multiplayer games that
allow users to deposit and earn money, along with in-game
prizes.  Users of Papaya's games typically compete with between
five and twenty opponents.  Skillz operates a mobile gaming
platform in competition with Papaya.  The Skillz platform hosts
games, each of which allows gameplay between only two players,
created by third-party developers.

The PSAC also alleges that Skillz engaged in a multipronged
campaign to discredit Papaya in the eyes of the public and law
enforcement officials regarding Papaya's use of robots or
"bots".  The proposed amendments refer to three aspects of that
campaign, each of which is described separately below.

3

A.   Consumer Complaints Sent to State Attorneys General

According to the PSAC, Skillz created and funded a false-front organization called 4 Fair Play.  Through its website, 4 Fair Play solicited complaints from consumers about Papaya and other competitors of Skillz.  Through a form on the website, visitors could input personal information, select a game about which they wanted to complain, and write a description of their complaints in an open-ended submission box.  Skillz forwarded these complaints to state attorneys general.  But before doing so, it added stock language to the complaint, which said "I'm a resident of your state and I would like to make you aware of a mobile game that is defrauding consumers like me out of their hard-earned money.  I strongly believe the following games use AI or 'bots' to scam players by pretending that those are real players."  It then listed the games selected on the complaint form.  Skillz did not tell complainants it was adding this language.  Most complaints that 4 Fair Play received did not mention bot use, but the stock language, which misleadingly appeared to have been written by the complainant, was added to them anyway.  Skillz "spot checked" the complaints that it forwarded to law enforcement, but it otherwise did not vet them to make sure they came from real people.

4

B.   4 Fair Play Website Representations

Among other content maligning Papaya, the 4 Fair Play website included a page titled "What Players Are Telling Us" that purported to show six short quotations from consumers complaining about Papaya's games.  Another page on the website showed six other such quotations.  These testimonials, each one or two sentences long, were attributed to consumers identified only by initials and state of origin, such as "L.G.S. from Pennsylvania" and "J.P. from Florida," or by the game they had played, such as a "Bingo Cash player."  Skillz itself had drafted some of those testimonials, and they had not come from real consumers.  Other testimonials did come from real consumers but had been edited by Skillz.

Separately, the 4 Fair Play website displayed a banner reading "12,594 and Counting!"  In fact, there had not been exactly 12,594 complaints submitted when that number was displayed.  Also, the number would increase every few seconds to give the sense that the counter was connected to a live database that was continuously updating, which it was not.

The home page of the 4 Fair Play website displayed a pie chart that purported to show the complaints the organization had received, broken down by the game referenced in the complaint. Three of the games were Papaya's, and the pie chart indicated

5

that complaints about those three games accounted for 40.2% of
the total complaints.  In fact, 40.2% of the complaints received
did not refer to Papaya's games.  The home page also displayed a
map of the United States purporting to show the numbers of
complaints submitted by consumers in each state.

      C.    Interview Scheme

In late 2023, 4 Fair Play, controlled by Skillz, hired an
organization to obtain confidential information from Papaya.
Portraying itself as a "public policy group conducting
research," the organization contacted Skillz employees using the
social media website LinkedIn and offered recipients $300 for
participating in interviews meant to "better understand the
mobile gaming industry."  An internal guide, which was edited by
Skillz executives, encouraged interviewers to ask questions
about Papaya's use of bots.  The involvement of Skillz and 4
Fair Play in this scheme was hidden.

Two former Papaya employees participated in interviews, one
in December 2023 and one in January 2024.  Both individuals had
signed agreements with Papaya prohibiting them from disclosing
the company's sensitive information.  In these interviews, the
former employees disclosed information about when and why bots
are used and the coding behind the bots, among other things.

Using the information collected in these interviews, Skillz publicly accused Papaya of using bots. In an article published in July 2022, Skillz's CEO said that competitors had an easier time pairing players because of their use of bots.

D.   This Lawsuit

Skillz initiated this action against Papaya on March 4, 2024, claiming that Papaya had falsely advertised its games to be free from bots. On August 5, Papaya filed an Answer to the Complaint, as well as counterclaims against Skillz and five other companies. Those counterclaims alleged false and deceptive practices under the Lanham Act and N.Y. Gen. Bus. L. § 349 ("GBL § 349"); defamation and civil conspiracy under New York common law; and copyright infringement and contributory and/or vicarious trademark and copyright infringement under 15 U.S.C. § 1114 and 17 U.S.C. § 501. 2025 WL 438387, at *4.

On September 4, Skillz moved to sever and dismiss the counterclaims against it. Following an initial pretrial conference on September 6, an Order of the same day set forth a schedule for discovery and other pretrial proceedings in this case. That Order set a September 25 deadline for Papaya to file amended counterclaims and stated, "[i]t is unlikely that Papaya will have further opportunity to amend." On September 23, Papaya filed the FAC, mooting Skillz's September 4 motion. The

7

FAC named only Skillz and two other counterclaim-defendants.  On October 11, Skillz renewed its motion to dismiss or, in the alternative, sever the counterclaims.

The February 7 Opinion granted Skillz's motion to dismiss in part.  It denied the motion with respect to Papaya's claims that Skillz's falsely advertised that its own platform did not use bots, matched players evenly, and allowed customers to withdraw cash at any time.  2025 WL 438387, at *6.  But it dismissed Papaya's claims that Skillz violated the Lanham Act and GBL § 349 by misrepresenting other companies' games on the 4 Fair Play website and in an article Skillz shared on social media.  Id. at *7.  The February 7 Opinion also dismissed Papaya's claims of defamation and civil conspiracy, which were based on the 4 Fair Play website and the article.  Id. at *8.  It also granted in part the motion to dismiss Papaya's copyright and trademark claims and severed the copyright and trademark claims that survived.  Id. at *10-13.

Papaya filed its motion for leave to file second amended counterclaims on March 3.  That motion was fully briefed on March 19.  Fact discovery concludes March 31, 2025, and expert discovery is scheduled to conclude on May 30.

## Discussion

Rule 15(a)(2), Fed. R. Civ. P., states that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  "Where, as here, a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause."  Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009) (citation omitted).  "Whether good cause exists turns on the diligence of the moving party."  Id. at 355 (citation omitted).

Even under Rule 15(a), a district court may "deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  MSP Recovery Claims, Series LLC v. Hereford Ins. Co., 66 F.4th 77, 90 (2d Cir. 2023) (citation omitted).  "A plaintiff need not be given leave to amend if [it] fails to specify . . . how amendment would cure the pleading deficiencies in [its] complaint."  Melendez v. Sirius XM Radio, Inc., 50 F.4th 294, 309 (2d Cir. 2022) (citation omitted).  "Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse

of discretion to deny leave to amend." Lucente v. Int'l Bus.
Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation
omitted). "An amendment to a pleading is futile if the proposed
claim could not withstand a motion to dismiss pursuant to Fed.
R. Civ. P. 12(b)(6)." Id. Whether a proposed claim could
withstand a motion to dismiss depends on whether the proposed
pleading contains "sufficient factual matter, accepted as true,
to state a claim to relief that is plausible on its face." Doe
v. Franklin Square Union Free Sch. Dist., 100 F.4th 86, 94 (2d
Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009)).

Papaya proposes three sets of revisions to its
counterclaims that it argues cure deficiencies identified in the
February 7 Opinion or support a new cause of action. First, it
adds allegations related to Skillz's handling of complaints it
received through the 4 Fair Play website, including that it
added allegations of bot use to complaints that did not mention
bots, before forwarding them to state law enforcement. Second,
Papaya alleges that the 4 Fair Play website included fabricated
quotations from consumers. Third, the PSAC alleges that Skillz
directed a scheme in which a group purporting to conduct
industry research tricked Papaya employees into disclosing
sensitive information about Papaya's business. This last

allegation forms the basis of a claim for unfair competition
that has been added in the PSAC.  In response to Papaya's
motion, Skillz argues primarily that Papaya lacks good cause to
amend its counterclaims and that its proposed amendments would
be futile anyway.  Skillz's arguments prevail, largely because
Papaya's proposed amendments would be futile, and Papaya's
motion is denied.

I.  Consumer Complaints

In the PSAC, Papaya adds allegations that Skillz
misleadingly supplemented consumer complaints before sending
them to state law enforcement.  Skillz argues that these
allegations rehash the dismissed counterclaims, are untimely,
and would be futile due to their failure to allege injury given
Papaya's admission of surreptitious bot use.

As an initial matter, these allegations could not support a
claim for Lanham Act false advertising or deception under GBL §
349, as both of those laws apply only to consumer-facing
representations.  See 15 U.S.C. § 1125(a)(1)(B) (prohibiting
certain conduct "in commercial advertising or promotion");
Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)
(requiring an allegation of "consumer-oriented conduct" for a
GBL claim).  That leaves a claim for defamation, which under New
York law requires

11

> 1) a written defamatory statement of fact concerning
> the plaintiff; 2) publication to a third party; 3)
> fault (either negligence or actual malice depending on
> the status of the libeled party); 4) falsity of the
> defamatory statement; and 5) special damages or per se
> actionability (defamatory on its face).

Electra v. 59 Murray Enters., Inc., 987 F.3d 233, 259 (2d Cir.
2021) (citation omitted).  The element of falsity requires
pleading that the alleged statement is not "substantially true,"
meaning that it "could have produced no worse an effect on the
mind of a reader than the truth pertinent to the allegation."
Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236,
241-42 (2d Cir. 2017) (citation omitted).

The crux of Papaya's allegations is that Skillz added stock
language to the complaints it forwarded to law enforcement, so
that it appeared consumers were complaining about Papaya's use
of bots when they were only complaining about other things.[1]  The
PSAC does not allege that the substantive content of this stock
language was false -- just that it was misattributed.  Nor does
the PSAC allege that state authorities ever did anything with
these communications or that they became public.  These proposed
additions thus do not amount to any allegation of harm,

---

[1] The PSAC and Papaya's briefing emphasize other alleged facts,
such as that Skillz sent complaints about Papaya to law
enforcement, but not complaints about itself, and that Skillz
did not "vet" the complaints that it sent.  It is not clear what
cause of action those allegations are meant to support or what
law would require Skillz to do those things.

reputational or otherwise.  In its brief, Papaya suggests that
Skillz gave "governmental officials . . . the unmistakable
impression that thousands of consumers wanted them to take
action in response to Papaya's alleged unfair use of bots."  The
problem with this claim is that the PSAC does not actually
allege that such an impression was false -- that is, that Papaya
did not use bots and that consumers did not want law enforcement
to take action in response to Papaya's alleged unfair use of
bots.  Papaya's argument that the misleading stock language
caused it reputational harm and resulting lost profits cannot
succeed given the PSAC's failure to allege that any customer or
potential customer ever saw it.

    To the extent Papaya seeks to rely on a theory of harm
known as per se actionability, that theory requires proof that
the statement "impugns the basic integrity or creditworthiness
of a business."  Celle v. Filipino Rep. Enters. Inc., 209 F.3d
163, 180 (2d Cir. 2000) (citation omitted).  The issue of the
integrity of Papaya's business practices and its deception of
the public about its historic use of bots to compete with
customers in its games of "skill" are at the heart of this case.
Papaya does not deny such undisclosed historic use in its PSAC

or otherwise in this litigation.[2]  Therefore, Papaya will not be
in a position to prove the falsity of the supposedly defamatory
statement at trial.

II.  4 Fair Play Website

Next, Papaya proposes adding allegations that testimonials
on the 4 Fair Play website appeared to have been submitted by
real consumers, when in fact Skillz fabricated them.  Skillz
argues that these allegations misrepresent the evidence produced
in discovery and that they rehash a theory rejected by the
February 7 Opinion.  Because these proposed revisions would be
futile, Papaya's motion to amend the complaint with them is
denied.

Claims for false advertising under the Lanham Act and the
GBL and for defamation under New York common law all require
that alleged misrepresentations be about something material --
that is, something that would have a meaningful effect on the
reader.  Int'l Code Council, Inc. v. UpCodes Inc., 43 F.4th 46,
63 (2d Cir. 2022) (requiring materiality, meaning that the
statement is "likely to influence purchasing decisions," for a
Lanham Act claim (citation omitted)); Orlander, 802 F.3d at 300;

---

[2] In recent depositions, none of Papaya's individual deposition
witnesses denied the historic use of bots, as they all asserted
their Fifth Amendment rights against self-incrimination rather
than testifying to any potentially disputed facts.

14

Tannerite Sports, LLC, 864 F.3d at 242 (explaining that whether
a statement is actionable defamation depends on its effect on
the reader).  A plaintiff must also plausibly allege it was
harmed by the defendant's putatively unlawful conduct to state a
claim for relief.  The PSAC includes new allegations that Skillz
posted fabricated consumer complaints on the 4 Fair Play
website, but the allegation is still insufficient to state a
claim.

Papaya does not allege that the content of the
testimonials, which accuse Papaya's games of using bots or of
being unfair in general, are false.  Nor does the PSAC allege
that numerous real consumers were not submitting complaints
along these lines.  The only alleged misrepresentation is that
some of the consumers (barely) identified by the website --
"J.P. from Florida," "Bingo Cash Player," and the like -- did
not write the specific words included in the displayed
testimonials.  To the extent Papaya is alleging that such
misattribution is material and caused injury, those allegations
are simply not plausible.  Even assuming the PSAC's factual
allegations are true, no reasonable jury could find that
anyone's purchasing decisions would have been affected (or that
consumers would be affected in any other meaningful sense) by
the fact that a real "J.P. from Florida" did not say the words,

"I have genuinely never played a game that is so rigged in my life."  While parties generally "should be given the opportunity to develop their evidence to demonstrate materiality," UpCodes Inc., 43 F.4th at 64, the pleadings must set forth some plausible basis for the defendant to ultimately be held liable. The PSAC fails to do so here.

The proposed amendments related to the complaint counter, pie graph, and map are futile for the reasons explained February 7 Opinion.  That these graphics were giving viewers the wrong impression about the speed at which they were being updated does not state a claim.  Even as amended, these allegations do not plausibly plead that the graphics were "literally false" or not "substantially true," as required under applicable law. Sprinkling the word "unambiguously" among the descriptions of the challenged representations does not make them so.[3]

III. Interview Scheme

Papaya's last set of proposed amendments includes facts regarding the interview scheme and a claim for unfair competition.  Skillz argues that the proposed allegations would fail to state a claim.  Skillz's argument is correct.

---

[3] For one representative example, the PSAC refers to the sentence "Bingo Cash and Solitaire Cash by Papaya Games have received the highest complaints so far" as "unambiguously" representing that the pie chart was continuously connected to a live database.

16

"Under the misappropriation theory of unfair competition, a party is liable if they unfairly exploit the skill, expenditures and labors of a competitor." E.J. Brooks Co. v. Cambridge Sec. Seals, 31 N.Y.3d 441, 449 (N.Y. 2018) (citation omitted). "The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." Pauwels v. Deloitte LLP, 83 F.4th 171, 185 (2d Cir. 2023) (citation omitted). "[I]f a plaintiff cannot adequately allege that a defendant misappropriated the plaintiff's property or trade secret, the plaintiff cannot state a claim" for unfair competition. Id. at 187. "[A]n unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." ITC Ltd. v. Punchgini, Inc., 9 N.Y.3d 467, 478 (N.Y. 2007) (citation omitted).

Papaya's proposed amendments related to the interview scheme are futile because they would not state a claim for unfair competition. The PSAC alleges that Skillz used deceptive means to obtain information about Papaya's business. But it does not allege that Skillz actually did anything with that

information.  The PSAC mentions that, following the interviews,
Skillz told reporters that Papaya was using bots in its games.
But according to the PSAC itself, Skillz was publicly accusing
Papaya of using bots well before the interviews took place
anyway.  Indeed, the PSAC says that the 4 Fair Play website,
which forms much of the basis of Papaya's defamation and false
advertising claims and which accused Papaya of using bots, was
published as early as September 2023.[4]  In this context,
characterizing the accusation that Papaya used bots as a trade
secret is a stretch at best.  And it is not clear what "skills,
expenditures, [or] labors" that piece of information alone
represents.  E.J. Brooks Co., 31 N.Y.3d at 449.  But even if it
were a trade secret, without any facts suggesting that Skillz
did anything with the sensitive information it allegedly
purloined, Papaya cannot state a claim for unfair competition.

At its heart, Papaya accuses Skillz of using a
surreptitious practice to confirm that Papaya was deceiving
consumers by using bots to compete against them without
disclosing that practice.  Papaya's surreptitious use of bots is
at the core of Skillz's claims against Papaya in this
litigation, including claims of false advertising and deceptive

---

[4] According to the PSAC, the website appeared in substantially
the same form from November 7, 2023, at the latest, until it was
taken down in early 2024.

acts or practices.  Papaya's briefing does not address whether
its purported use of a deceptive practice that may violate the
law can constitute a trade secret.

Finally, Papaya points to the PSAC's allegation, based
"upon information and belief," that Skillz used information
obtained in the interviews about Papaya's matchmaking processes
to "unfairly compete with Papaya" such as by "focus[ing] its
advertising and marketing efforts."  Alone, this allegation is
the kind of "threadbare recital[] of the elements of a cause of
action" that could not overcome a Rule 12(b)(6) motion to
dismiss.  Iqbal, 556 U.S. 678.  Viewed in context, those
"advertising and marketing efforts" appear to be Skillz accusing
Papaya of bot use, which, for the reasons discussed above, does
not help the PSAC state a claim.  Accordingly, Papaya's proposed
amendments related to the interview scheme are futile.

Independently, it is not clear that Papaya has shown good
cause or justified its delay in proposing to amend its
counterclaims with the interview scheme.  Its brief in support
of its motion states that it relies on "newly discovered"
evidence to add allegations supporting an unfair competition
claim.  In fact, Papaya knew about the interview scheme, at the
latest, on November 21, 2024, when its counsel described it in
detail during a conference with the Court.  Similarly, Papaya

19

has been complaining about Skillz providing information to state attorneys general for months.  Otherwise, its complaints about the contents of the 4 Fair Play website are a repackaging of its dismissed claims.  Waiting more than three months, until near the end of fact discovery, to make the substantive amendments it proposes does not reflect diligence or due delay.

### Conclusion

Papaya's March 3 motion for leave to file the PSAC is denied.

Dated:      New York, New York
            March 26, 2025

                                   _____
                                        DENISE COTE
                               United States District Judge

20