# Exhibit F

# Morgan Lewis

**Jordan McCrary**
Partner
+1.213.680.6768
jordan.mccrary@morganlewis.com

July 7, 2025

**VIA E-MAIL**

Todd D. Kelly
Margaret E. Krawiec
David B. Leland
Michael A. McIntosh
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave. NW
Washington, DC 20005
Phone: (202) 371-7000
todd.kelly@skadden.com
david.leland@skadden.com
margaret.krawiec@skadden.com
michael.mcintosh@skadden.com

Re:     <u>Papaya Gaming Ltd. v. Fair Play for Mobile Games, et al.</u>

Counsel,

By July 11, 2025, please advise whether your client Papaya Gaming Ltd. ("Papaya") will voluntarily dismiss its lawsuit against Fair Play for Mobile Games, Josh Levin, Square Strategies LLC, Mavan Group, Inc., Valor Public Strategies LLC, Assemble the Agency LLC, and Lacie Newton (collectively, "Defendants"). If you or Papaya continue to prosecute the action against Defendants, we will promptly seek sanctions and recovery of attorneys' fees pursuant to FRCP 11(c), 28 U.S.C. § 1927, and N.Y. Civ. Rights Law § 70-a.

We previously sent you a letter on March 31, 2025 advising: "If you or Papaya continue prosecuting the complaint, please be advised that our clients reserve the right to seek sanctions and recovery of attorneys' fees and costs, including pursuant to Federal Rule of Civil Procedure 11(c), 28 U.S.C. § 1927, and anti-SLAPP laws, such as Virginia Code § 8.01-223.2 and New York Civil Rights Law Section 70-a." Rather than heeding our warning, you and Papaya doubled down by filing an Amended Complaint against Defendants in the United States District Court for the Eastern District of Virginia.

Your and Papaya's actions resulted in Defendants incurring substantial attorneys' fees and costs, including to prepare motions to dismiss and transfer the action to the Southern District of New York, which had previously twice-dismissed Papaya's essentially identical claims. Defendants' motions were fully briefed and were heard on July 2, 2025, by Judge Nachmanoff in the Eastern District of Virginia. The rough transcript of the hearing is attached as Exhibit 1. As you know, Judge Nachmanoff granted

---

**Morgan, Lewis & Bockius** LLP

300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132      **T** +1.213.612.2500
United States      **F** +1.213.612.2501

July 7, 2025
Page 2

Defendants' motion to transfer the action to the Southern District of New York. In doing so, he stated that a decision on Defendants' still pending motions to dismiss will "be left to the Court in the Southern District of New York" because that "is the most appropriate venue for adjudicating these claims to the extent there's any avenue for them to move forward." Rough Tr. 30:8-13.

As explained in my March 31 letter and further detailed in Defendants' pending Rule 12(b)(6) motion—which will be decided by the Southern District of New York absent prompt voluntary dismissal—you and Papaya have unreasonably and vexatiously multiplied proceedings in blatant violation of well-established res judicata principles, including the rule against claim splitting and the issue preclusion doctrine. In case you did not get the hint, Judge Nachmanoff appeared to believe Defendants' motion to dismiss will likely be granted given his questioning whether "there's any avenue for [Papaya's claims] to move forward." Moreover, while you and Papaya disregarded our prior warnings about the risk of sanctions, you have now also been warned by Judge Nachmanoff.

Judge Nachmanoff found that Papaya has engaged in "unnecessary and duplicative litigation in the Southern District of New York, Virginia state court, and the Eastern District of Virginia." Rough Tr. at 30:5-8. Judge Nachmanoff also found that "Papaya has blatantly attempted to get a second bite at the apple by pursuing different but clearly related defendants in a different forum after Judge Cote conclusively rejected Papaya's counterclaim and motion for leave to file a second amended counterclaim on virtually identical claims." *Id.* at 31:21-32:1.

Judge Nachmanoff's finding that "Papaya has blatantly attempted to get a second bite at the apple" after "Judge Cote conclusively rejected Papaya's counterclaim and motion for leave to file a second amended counterclaim on virtually identical claims" reinforces that sanctions are warranted. *See Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 245-49 (S.D.N.Y. 2014) (imposing Rule 11 sanctions against "party who re-files an action that is materially identical to an action previously dismissed by a court as being without legal merit"); *see also Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 138 (S.D.N.Y. 2005) (sanctioning party for filing litigation in Maine and Illinois federal courts against different parties arising out of the same facts and issues already litigated and rejected in New York).

Similarly, Judge Nachmanoff's finding that this action is "unnecessary and duplicative litigation" also demonstrates that sanctions are warranted here. *See* 28 U.S.C. § 1927 (providing that "[a]ny attorney … who so who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct").

You and Papaya proceed at your own peril if you disregard Judge Nachmanoff's and our warnings. Govern yourself accordingly. Rest assured that we are prepared to hold you and Papaya accountable for the tremendous waste you have caused. Of course, we hope it does not come to that and that you do the right thing for your own sake. In any event, our clients reserve all rights and remedies.

Sincerely,

Jordan McCrary

Cc: Christina Bost Seaton (christina.bostseaton@pierferd.com)

# Exhibit 1

1

**N O T I C E**

This transcript is an **UNCERTIFIED ROUGH DRAFT TRANSCRIPT.**  It

contains raw output from the court reporter's stenotype machine

translated into English by the court reporter's computer,

without the benefit of proofreading.  It will contain

mistranslations (wrong words), and misspellings.  These and any

other errors will be corrected in the final transcript.

Since this rough draft transcript has not been

proofread, the court reporter cannot assume responsibility for

any errors therein.

This rough draft transcript is intended to assist

attorneys in their case preparation and is not to be construed

as the final transcript.  It is not to be read by the witness or

quoted in any pleading or for any other purpose and may not be

filed with any court.

2

1          COURTROOM CLERK:  Civil Action 2025-470, Papaya Gaming

2    versus Fair Play For Mobile Games, et al.  Counsel, please note

3    your appearances for the record.

4          MR. McINTOSH:  Good afternoon.  Michael McIntosh on

5    behalf of plaintiff Papaya Gaming.  With me are Margaret Krawiec

6    and Todd Kelly.

7          THE COURT:  All right.  Good morning.

8          MR. HASTINGS:  Good morning, Your Honor.  Doug Hastings

9    for defendants Fair Play For Mobile Games, Josh Levin,

10    Square Strategies, Mavan Group, and Valor Public Strategies.

11    And with me are Beth Herrington and Jordan McCrary, who will be

12    arguing.

13          THE COURT:  All right.  Good morning.

14          MS. GLUCK:  Good morning, Your Honor.

15    Amy Epstein Gluck for defendants Assemble The Agency and

16    Lacie Newton.  And with me from New York is my partner

17    Christina Bost Seaton from Pierson Ferdinand.

18          THE COURT:  All right.  Good morning to you all.  This

19    matter comes before the Court on a host of motions, and the

20    Court has endeavored to review all the materials, the motions,

21    the memoranda, the oppositions, the reply briefs.

22          And as an initial matter, there are a set of motions to

23    take judicial notice, and I will grant those motions and take

24    judicial notice of the attached documents.  I don't think

25    there's an objection, is there?

1          MR. McINTOSH:  That's correct, Your Honor.

2          THE COURT:  So that disposes of those motions.  And

3     there's a lot to talk through, but we're not going to spend all

4     day discussing this matter.  We're going to go to the heart of

5     it and talk about transfer first.  If we need to talk about

6     anything else, we'll do so.

7          So I'll hear first from whoever is going to argue that

8     matter.

9          MR. McCRARY:  Good morning.  Jordan McCrary on behalf

10    of Fair Play For Mobile Games, Josh Levin, Mavan Group, and

11    Valor.

12          This case should be transferred to the

13    Southern District of New York for the interests of justice and

14    the convenience of the parties, so it can proceed before

15    Judge Cote, who has twice dismissed these same claims.  This

16    case bears little relation to Virginia.  The only connection

17    between Virginia and this case is a long dissolved nonprofit

18    organization, Fair Play For Mobile Games.  Six of the seven

19    defendants are located outside of Virginia.  Assembly the Agency

20    is -- its principal place of business is in New York, Ms. Newton

21    is domiciled in New York, and for the other defendants, they've

22    explained in declarations why New York would be a more

23    convenient forum for them.

24          Papaya argues that Virginia has a strong connection to

25    this case because of the Fair Play website.  The Fair Play was

4

1    accessible in all 50 states; indeed, the entire world.  Papaya's

2    issue with the Fair Play website was the gathering of complaints

3    from consumers.  There was more than seven times as many

4    complaints from consumers in New York versus Virginia.

5           Moreover, Papaya takes issue with the forwarding of

6    those consumer complaints to state attorneys general.  No

7    consumer complaints from Virginia were forwarded to the Virginia

8    state attorney general.  In contrast, complaints were forwarded

9    to the New York attorney general.

10          Normally in cases, a plaintiff is one of the most

11   important witnesses.  Here, Papaya's witnesses in New York, in

12   the New York action, all pled the Fifth Amendment right against

13   self-incrimination rather than testify.  So they will not be

14   testifying in this case.  Furthermore, Papaya is not based out

15   of Virginia.  It's a corporation that's domiciled in Israel.  So

16   because of that, its choice to refile here in Virginia should be

17   given no weight.

18          THE COURT:  How do you respond to the argument that

19   there's no personal jurisdiction in New York and the case

20   couldn't have been brought there over several of the defendants?

21          MR. McCRARY:  Papaya pleads that the defendants in this

22   case violated New York state law which prohibits providing false

23   information for public filing to New York state officials.  They

24   allege that was a tortious act, and therefore New York has

25   personal jurisdiction over the defendants.  And, of course,

5

1    Ms. Newton and Assemble the Agency are at home in New York, so

2    there's general personal jurisdiction over them.  And because of

3    the alleged violation of New York state law and also because of

4    alleged co-conspirator jurisdiction, there would also be

5    jurisdiction over all of the defendants in New York as well.

6    And notably, Papaya itself has relied on conspiracy jurisdiction

7    to plead personal jurisdiction over six of the seven defendants

8    in this case.

9         Additionally, not only has Judge Cote twice dismissed

10   these same claims by Papaya, but additionally, she's currently

11   presiding over related litigation that was brought by Skillz

12   against Papaya, which is set for trial, where it will be decided

13   whether Papaya is liable for using bots.  And Judge Cote noted

14   in her order dismissing Papaya's claims that that issue,

15   Papaya's use of bots, is at the heart of not only the claims

16   that she dismissed, which Papaya reasserts here, but also the

17   ongoing litigation against Papaya where it will be decided

18   whether Papaya is liable for that conduct.

19        Notably, Papaya does not deny that it used bots, it

20   simply just says that doesn't give rise to liability.  But there

21   will be extensive witness testimony from experts.  Again,

22   because Papaya is not testifying because it's pled the Fifth

23   Amendment right against self-incrimination, there will be

24   testimony and evidence presented at that trial regarding

25   Papaya's use of bots if it's not disposed of before on summary

1    judgment.

2         Additionally, in addition to the 1404 factors being

3    satisfied here, the first-filed rule also reinforces that

4    transfer is appropriate.  The first-filed rule applies based on

5    the chronology of filing where there's substantial similarity of

6    the parties and substantial similarity of the issues.  All of

7    those factors are present here.  And therefore, the first-filed

8    rule provides an additional basis, in addition to the 1404

9    factors, and it reinforces that transfer is appropriate.

10        THE COURT:  Help me understand the chronologies as you

11   understand it.  I've taken judicial notice of the filings in

12   New York, and the first case was filed by Skillz.  Of course,

13   the other side is going to argue Skillz doesn't have anything to

14   do with this.  It's not one of the defendants.  But help me

15   understand the chronology of when this was filed in relation to

16   the counterclaims that were litigated in New York.

17        MR. McCRARY:  Papaya's claims actually first began in

18   Virginia state court.  Papaya then served subpoenas in that

19   action on defendants here, and it said in its pleadings that

20   through those subpoenas it identified the defendants here.

21        It then moved --

22        THE COURT:  And when was that Virginia state court

23   proceeding filed, before or after the Southern District of

24   New York case had been instituted by Skillz?

25        MR. McCRARY:  It was filed afterwards.  So the first

7

```
1    Skillz case against Papaya was filed, then Papaya filed its

2    claims in Virginia state court.  Papaya then moved to dismiss

3    Skillz's claims against Papaya in the Southern District of

4    New York, and after it lost that motion to dismiss Skillz's

5    claims, it then filed its claims against Skillz and a number of

6    other defendants alleging the same claims that are alleged here.

7            So Papaya previously chose not to litigate its claims

8    in Virginia.  It abandoned that case and chose instead to pursue

9    its claims in New York.  And in New York, in its pleadings

10   there, Papaya identified each of the defendants here by name,

11   and alleged that they were co-conspirators with Skillz based on

12   the same exact facts that Papaya reasserts here.

13           Papaya made a strategic choice not to join the

14   defendants here as parties, but it did serve subpoenas on all of

15   the defendants here in the New York action, and it obtained

16   extensive discovery from them.  And yet it chose, whether it's

17   in its original complaint or first amended complaint or its

18   proposed second amended complaint not to join the defendants

19   here.  It decided not to do that, not to pursue claims against

20   the defendants here until after Papaya had lost in New York.

21           And what Papaya is trying to do here is to collaterally

22   attack Judge Cote's rulings, her ruling granting Skillz's

23   12(b)(6) motion to dismiss that was based on what Judge Cote

24   found, that the statements, the challenged statements on the

25   Fair Play website were not materially false, and therefore they
```

8

1    were not actionable.

2            And then Papaya filed a proposed second amended

3    complaint, and there it focused on the same facts that it seeks

4    to reassert here regarding, one, the submission of complaints to

5    law enforcement; two, the alleged misattributed quotes and

6    statements on the Fair Play website; and three, the purported

7    interview scheme.  And Judge Cote, in her detailed 20-plus page

8    order explained why those claims fail to state a claim, and she

9    went through them in detail.

10           And Papaya has filed here, hoping to attack

11   Judge Cote's orders, not only her orders twice rejecting

12   Papaya's claims, but also her orders closing discovery there,

13   her rulings on discovery - for example, she's granted protective

14   orders in certain cases, she's granted motions to compel, she's

15   granted sealing orders - and Papaya is seeking to come down here

16   hoping to collaterally attack her orders.  That's not allowed.

17           If Papaya has disagreement with Judge Cote's orders, it

18   should take them up with the Second Circuit Court of Appeals.

19   It should not come down to the Eastern District of Virginia

20   hoping to collaterally attack her orders.

21           THE COURT:  All right.  Thank you.

22           MR. McCRARY:  Thank you.

23           THE COURT:  Let me just make sure before I hear from

24   the plaintiff if Ms. Gluck wants to weigh in on the issue of

25   transfer.

 1              MS. GLUCK:  Thank you.  No, we have nothing additional

 2     to add on that point.  We join.

 3              THE COURT:  All right.  Very good.

 4              MR. McINTOSH:  Good morning, Your Honor, and may it

 5     please the Court.  Michael McIntosh on behalf of plaintiff

 6     Papaya Gaming.

 7              I want to start out by correcting the record here a bit

 8     on the fundamental differences between this New York case and

 9     the amended complaint in this case.  As my friend just said and

10     as Judge Cote said in her opinions and is quoted throughout

11     defendants' brief, the heart of the case in the

12     Southern District of New York are allegations concerning

13     Papaya's bot use and the alleged consumer deception.  This case

14     has nothing to do with Papaya's alleged bot use, it has nothing

15     to do with consumer deception.  The core of this case is

16     whether, as defendants now have admitted through counsel's sworn

17     declaration, through their briefing, defendants submitted false

18     fabricated complaints to law enforcement urging them to take

19     action against Papaya under false pretenses.

20              So the claims are different, the legal standards are

21     different.  Nothing in Judge Cote's opinion counsels in favor of

22     granting a motion to dismiss in this case.

23              And I would like to focus in particular on one piece of

24     Judge Cote's opinion before I move to some of the procedural

25     history and the transfer factors.  But the nub of defendants'

1    argument here is pointing to Judge Cote's conclusion that Papaya

2    did not allege that consumer statements in these doctored

3    letters that Papaya used bots or that Papaya wanted law

4    enforcement action were false.

5          But that's not at issue here.  The content of the

6    letters is not at issue here.  What's at issue in this case

7    under the business conspiracy claim is whether defendants

8    fabricated, altered, or manipulated those letters containing

9    those contents.

10         And here, it's undisputed, based on defendants'

11   counsel's sworn declaration, based on defendants' brief, that

12   that's exactly what they did.  That is classic business

13   conspiracy, it's textbook obstruction of justice in violation of

14   18 U.S.C. 1001, among other statutes.

15         So this case at its core is far different from the case

16   that Judge Cote considered, and to determine that, one need look

17   only at Judge Cote's words in her orders.

18         I also want to explain about the procedural history

19   here.  Papaya did not choose to file an action in New York, it

20   did not choose to litigate in New York.  Skillz sued Papaya in

21   March 2024 in a purely consumer deception case.  So Skillz

22   alleged that Papaya had falsely advertised and made certain

23   misrepresentations about the nature of its matchmaking

24   practices.  And Skillz asserted claims under the federal

25   Lanham Act, which governs false advertising, and under the

 1    New York analogous statute.  Papaya sought to dismiss these

 2    claims.  It didn't seek to litigate in New York.  It filed a

 3    motion to dismiss.

 4            While that motion to dismiss was pending, separately

 5    Papaya filed a John Doe action in Virginia state court seeking

 6    to determine who was behind the 4FairPlay website and the

 7    4FairPlay activities that form the basis of the amended

 8    complaint.  And the reason Papaya had to go to those great

 9    lengths to determine who was behind the website is because the

10    defendants and Skillz and others deliberately hid their tracks

11    so they could not be identified as being the parties responsible

12    for the website and 4FairPlay's activities.

13            THE COURT:  And just to be clear, your position is that

14    Skillz is behind it.  Correct?

15            MR. McINTOSH:  Our position is that Skillz and

16    defendants are jointly behind the 4FairPlay website.  That's

17    correct.

18            THE COURT:  But you made the decision not to include

19    Skillz in this lawsuit?

20            MR. McINTOSH:  That's correct.  So Papaya sued -- I

21    mean, to finish the chronology, with Your Honor's indulgence,

22    the Court in New York denied Papaya's motion to dismiss these

23    consumer deception claims.  Then Papaya, in its answer, asserted

24    a host of counterclaims, one component of which were claims

25    related to the false advertising on the 4FairPlay website;

1    mainly under the federal Lanham Act.  And under the New York

2    analogous false advertising statute Papaya asserted intellectual

3    property claims against Skillz and other gaming developers, and

4    Papaya's asserted claims for false advertising related to

5    Skillz's misstatements about its matching of players.  And that

6    was in September of 2024.

7          And notably, Your Honor --

8          THE COURT:  So that was essentially, you're accusing us

9    of doing this and we're accusing you back of doing the same

10   thing?

11         MR. McINTOSH:  If Your Honor would characterize it that

12   way.  I would say the core of the complaint and the

13   counterclaims were mirror images.  That's correct.

14         So Skillz was alleging that Papaya had falsely

15   advertised to consumers about certain aspects of its

16   matchmaking.  Papaya alleged that Skillz did the same thing, and

17   in particular promised even matches when it deliberately

18   unevenly matches players, and in fact, forces players to win or

19   lose in specific games, contrary to its public advertisements.

20         That is the core of the case, and that has been the

21   core of discovery in that case.  Defendants throw out statistics

22   about the number of documents produced in the New York

23   litigation and sealing orders and discovery orders, but the vast

24   majority of those documents produced, the vast majority of those

25   orders dealt with these core consumer deception claims and did

1    not deal --

2            THE COURT:  And that's what Judge Cote permitted Skillz

3    to pursue again Papaya, and that's the one area that Judge Cote

4    permitted Papaya to pursue against Skillz.  Is that right?

5            MR. McINTOSH:  That is exactly right, Your Honor.

6    Judge Cote has been clear from the outset that she views that

7    case as, at its core, about consumer deception and

8    representations about matchmaking.  And for that reason, even

9    though Judge Cote didn't dismiss the intellectual property

10   claims in their entirety, she ordered them severed because she

11   wanted to keep the core case before her focused on dueling

12   consumer representations, that also informed her discovery

13   decisions.

14           So most notably, Papaya took no depositions regarding

15   4FairPlay.  In fact, Judge Cote entered a fairly extraordinary

16   order barring Papaya from asking any witnesses about 4FairPlay.

17   There's no deposition discovery conducted with 4FairPlay.  And

18   so these declarations we're seeing for the first time from the

19   defendants, including defendant Levin, these are new to us.  We

20   haven't had a chance to question any of these witnesses because

21   Judge Cote shut down that discovery to keep the case before her

22   narrowly about consumer deception and false advertising.

23           Similarly, although defendants were subpoenaed as third

24   parties in the New York litigation, the scope of their

25   production and the scope of the subpoenas necessarily was

1    curtailed because of their status as third parties.

2           THE COURT:  But those were choices that you made in not

3    trying to bring them in on your counterclaim.  Correct?

4           MR. McINTOSH:  Your Honor, I wouldn't say,

5    respectfully, it was a choice not to bring them in.  I think

6    much of the evidence in the amended complaint was obtained

7    following Judge Cote's deadline for submitting amended

8    counterclaims in the New York action.  And I think what's really

9    important here is Judge Cote didn't dismiss the 4FairPlay

10   related counterclaims until less than two months before the

11   close of fact discovery.  And Papaya worked expeditiously to

12   file a motion for leave to file proposed second amended

13   counterclaims, but that was filed less than a month before fact

14   discovery.  And it strains credulity to think Papaya could have

15   or should have sought to inject seven new parties at that time,

16   each of whom could have contested the motion, each of whom could

17   have filed motions to dismiss and sundry other motions we see in

18   this case, and each of whom would have had a right to conduct

19   discovery.  This all happened a few weeks before the close of

20   fact discovery.

21          And I also want to step back a bit and note the default

22   rule that the Supreme Court has recognized for 35 years, and

23   dates back longer than that, that a party simply isn't required

24   to name all joint tort feasors in a single action.  Or as the

25   Second Circuit put it in ^  Sathergote, and Second Circuit

1    preclusion law applies here, a plaintiff has as many causes of

2    actions as there are defendants.

3          So here, Papaya's choice, if you will, to file two

4    separate lawsuits, it's not inherently nefarious, underhanded,

5    there's no gamesmanship here.  This is what is permitted under

6    the default rules of this court and the Second Circuit.

7          And if I could, I would like to move to transfer.  And

8    first of all, I want to push back on this notion that Virginia

9    has no connection to this lawsuit.  The lynchpin of the schemes

10   alleged in the complaint was 4FairPlay.  It was an ostensible

11   social welfare organization.  We know that's not the case.  But

12   it was incorporated in the Commonwealth and its headquarters

13   were in this district.  So this was the public face of these

14   schemes.

15         4FairPlay sponsored the 4FairPlay website.  4FairPlay

16   the entity contracted with the defendants to perform services

17   and conduct the activities that are alleged in the complaint.

18   4FairPlay was the hub of all of this activity.  4FairPlay

19   submitted these fake complaints to government officials, and

20   4FairPlay was a Virginia incorporation.  There is a significant

21   connection to Virginia more so than New York, given the

22   centrality of 4FairPlay.

23         And if I can go through the 1404 factors, I would like

24   to first start with personal jurisdiction, because Your Honor

25   asked the question, or nodded to the rule that a defendant

1   seeking transfer bears the burden to establish that the suit

2   could have been brought at the time it was filed in the

3   transferee district.  Defendants haven't done that here, apart

4   from the Assemble defendants who are domiciled in New York.

5           Defendants in their opening brief, as Your Honor might

6   recall, submitted declarations prospectively consenting to

7   personal jurisdiction in the Southern District of New York.  But

8   that's not enough.  Their burden in their opening brief was to

9   establish that this action could have been brought at the time

10  it was filed in the Southern District of New York.  They didn't

11  do that.

12          Now, on reply, they raise the argument that the

13  connections in New York are sufficient for a New York court to

14  exercise personal jurisdiction over them.  First of all, that's

15  waived.  Defendants bear the burden to establish that.  They

16  didn't raise that argument in their opening brief, so that

17  argument is waived.

18          But even if Your Honor considers the argument, it's

19  still not available because defendants hardly cite the New York

20  long arm statute.  I heard my friends talk about conspiracy

21  jurisdiction in the commission of tortious acts.  They haven't

22  cited any cases construing those provisions of the long arm

23  statute, they haven't established that personal jurisdiction in

24  New York would comport with due process, they haven't

25  established that personal jurisdiction in New York is fair and

1    reasonable.  They haven't done their work.  They haven't carried

2    their burden.  They haven't done their work.  They haven't

3    carried their burden.

4         So the court need not go any further under 1404A

5    because defendants haven't carried their initial burden to

6    establish that this case could have been brought in New York --

7         THE COURT:  But help me understand your argument about

8    why personal jurisdiction is appropriate for all of the

9    non-Virginia defendants here, but it wouldn't be equally

10   applicable to New York.

11        MR. McINTOSH:  Sure.  Certainly, Your Honor.  And I

12   will first start by saying, none of the defendants outside the

13   Assemble defendants have challenged personal jurisdiction.  So

14   by not challenging that, they have consented or waived any

15   objection to personal jurisdiction in this court.

16        But again, I think it goes back to 4FairPlay.

17   4FairPlay is a Virginia entity.  All of the defendants

18   contracted with 4FairPlay, this Virginia entity operating under

19   Virginia law, to perform the services that they performed.

20   4FairPlay hosted the interactive website that harvested personal

21   information and added that personal information to falsified

22   complaints.  It was available in Virginia, it solicited

23   complaints from residents of the Commonwealth.  The amended

24   complaint alleges, and it should be accepted as true, that those

25   complaints then were given to the Virginia Attorney General.  I

1    know defendants have come up with a different explanation in an

2    untested declaration, but that's a question of fact that can be

3    resolved in discovery.

4         On that point, as an aside, I might just add, it's

5    interesting that the 4FairPlay website promised to everyone who

6    submitted a complaint that their complaint would be forwarded to

7    the attorney general in their state.  And yet now we hear from

8    defendant Levin they didn't actually do that.  They picked and

9    chose which government officials they would submit complaints to

10   based on which government officials Mr. Levin thought would be

11   enticed to start investigations of Papaya and other mobile

12   gaming companies.

13        So, Your Honor, it's the presence of 4FairPlay that

14   provides a link to the activities alleged in the amended

15   complaint that's not present in New York, and that is the key

16   distinction between the Commonwealth's connections to this case

17   and New York's connections to this case.

18        If I may, I would like to just go through the three or

19   so 1404A factors.  So first, I have touched on the first one.

20   But defendants don't dispute that in the ordinary course a

21   plaintiff's choice of forum here, Papaya's choice to litigate in

22   this court, is entitled to substantial deference.  Now, there

23   are cases holding that that deference is constrained when there

24   are few if any connections between the forum and the litigation,

25   but as I've just outlined, 4FairPlay is the hub of all of these

1    schemes, and it bears a strong connection to all of the claims

2    and facts alleged in the amended complaint.

3         So this is a case where Papaya's choice to litigate

4    here is entitled to substantial deference.

5         Second, looking at the convenience of the parties and

6    witnesses, that doesn't really point in any way toward New York,

7    Virginia, or anywhere else.  And this is the age of digital

8    discovery.  Documents are as accessible in New York as Virginia,

9    as Idaho.  There are no conveniences to be gained by litigating

10   this case in New York.

11        And the same goes for witnesses.  Witnesses in this day

12   and age can be deposed via videotape, and the videos can be

13   played at trial and those depositions can be designated as trial

14   depositions.  There's no discernible need for witnesses,

15   supposed consumers who submitted complaints, to travel from

16   faraway places to the Commonwealth for a potential trial in this

17   case.

18        And then the third factor, the interests, really, of

19   the Commonwealth or this district in hearing this case weigh

20   strongly in favor of keeping this case in Virginia.

21   4FairPlay -- defendants chose to incorporate 4FairPlay in the

22   Commonwealth to take advantage of the Commonwealth's laws on

23   corporate entities.  They used those laws to attain status as a

24   501C3 social welfare organization under federal law.  But while

25   they were doing this and publicizing this as their mission, they

1    were, as defendants candidly admit, undertaking duplicitous and

2    deceptive schemes to take down companies for profit.  And this

3    court, this Commonwealth, has an interest in ensuring that

4    companies incorporated in the Commonwealth abide by the

5    Commonwealth's law.

6            And I should add there that this isn't an isolated

7    instance.  As the amended complaint sets out, defendants have a

8    habit of incorporating these types of supposed nonprofits in the

9    Commonwealth and using them to further business and for-profit

10   agendas.  So this court certainly has an interest in policing

11   that misconduct.

12           And briefly turning to the first-filed rule, as

13   defendants conceded in their reply briefs, that doesn't offer

14   stand-alone authority to transfer a case to the jurisdiction in

15   which it was first filed.  At most, it's a consideration, but

16   courts still have to go through the 1404A factors, all of which,

17   as I have just outlined, weigh against transfer to New York.

18           And finally, Your Honor, I'll close quickly by noting

19   that it's a bit ironic that defendants throughout their briefs,

20   throughout their presentation here, excuse Papaya of forum

21   shopping.  It's simply not the case, as hopefully my brief

22   recitation of the history has made clear.

23           But at the same time, conspicuously, defendants aren't

24   simply requesting a transfer to the Southern District of

25   New York, they're requesting a transfer to a particular judge in

1  the Southern District of New York, the same judge who happens to

2  have dismissed Papaya's first amended counterclaims and denied

3  leave to file an amendment to those counterclaims.

4          THE COURT:  Well, that's an interesting issue.  Do you

5  think the Court has the power to transfer a case to a particular

6  judge as opposed to a jurisdiction?

7          MR. McINTOSH:  I don't believe so, Your Honor.  But I

8  make that point to show that the incentive here, it appears, for

9  the defendants to seek to transfer this case is not because

10  New York is a more convenient forum, but because they think they

11  know how the judge assigned to this case will decide it.  And I

12  think that undermines the entirety of their argument.

13          And I'll also note, the question here is, why New York.

14  There are other states, by the defendants' own terms, that have

15  the same or more connections than New York.  Let's take

16  California, for example.  California received more consumer

17  complaints than New York.  One of the defendants, Mavan, is

18  domiciled in California.  Unlike New York, 4FairPlay filed

19  public registration forms noting that it lobbied in California.

20          And so there are all of the same connections to

21  California, more connections in California than New York, but

22  defendants haven't answered why California wouldn't be a more

23  favorable jurisdiction, or Illinois, where two defendants are

24  domiciled.  It's a patent attempt at forum shopping.  And as

25  I've outlined, Virginia has stronger connections here, and all

1   of the 1404A factors support transfer.  Thank you, Your Honor.

2            THE COURT:  All right.  Thank you.  Mr. McCrary?

3            MR. McCRARY:  Thank you, Your Honor.  I would like to

4   address a few of the points that my colleague raised in support

5   of Papaya's arguments.

6            First, Papaya argues that its claims do not turn on

7   whether it used bots.  Papaya made that same argument to

8   Judge Cote, and she squarely rejected it.  In her opinion and

9   order, she explained that that -- the integrity of Papaya's

10  business practices and its surreptitious use of bots is at the

11  heart of both the claims that she dismissed that Papaya brought

12  as well as the ongoing claims that Skillz is prosecuting against

13  Papaya before Judge Cote.

14           Second, Papaya argues that there's new evidence in this

15  case, in Mr. Levin's declaration.  But they also admit that the

16  website told consumers and invited them to submit complaints if

17  they had been scammed by bots.  There are screenshots of the

18  4FairPlay website that show that.  And it said, once you submit

19  this, two things will happen:  One, we will auto populate an

20  email for you to send directly to your attorney general asking

21  them to take action; and two, we will send complaints to

22  attorneys general.  Because the more complaints the attorney

23  general receives, the more likely it is to take action.

24           Now, my colleague focused in his argument that this

25  case is different because it focuses on the submission of

23

1    consumer complaints to attorneys general.  But no complaints

2    were submitted to the Virginia Attorney General.  In contrast,

3    complaints were submitted by Fair Play to the New York Attorney

4    General.

5           And I would also like to read from a section of

6    Judge Cote's order where she explained -- where she summarized

7    Papaya's allegations there, or its proposed allegations in its

8    proposed second amended complaint.

9           Judge Cote:  Said first, it, referring to Papaya, adds

10   allegations related to Skillz's handling of complaints it

11   received through the 4FairPlay website, including that it added

12   allegations of bot use to complaints that did not mention bots

13   before forwarding them to state law enforcement; second, Papaya

14   alleges that the 4FairPlay website included fabricated

15   quotations from consumers; and third, the PSAC alleges that

16   Skillz directed a scheme in which a group purporting to conduct

17   industry research tricked Papaya employees into disclosing

18   sensitive information about Papaya's business.

19          That is exactly what the amended complaint here

20   alleges, those three things.  The facts are the same.  And

21   moreover, the issues are the same.  Judge Cote decided -- ruled

22   that Papaya's allegations regarding the statements on the

23   4FairPlay website failed to state a claim because Papaya failed

24   to show through its pleading that those statements were

25   materially false.  That continues to doom Papaya's claim here

1    regarding the statements on the 4FairPlay website.

2            Judge Cote also ruled that there was nothing materially

3    false in the statements or in the complaints that were forwarded

4    to law enforcement.  There, just as here, Papaya alleged that,

5    quote, stock language, end quote, was added to the complaints.

6    But Judge Cote again, in her opinion and order, explained why it

7    failed to state a claim because Papaya failed to show through

8    its pleading that that stock language was materially false.

9            And third, Judge Cote ruled that the allegations based

10   on the purported interview scheme failed to state a claim

11   because Papaya's own pleading showed that the alleged disclosure

12   of confidential information regarding Papaya's use of bots had

13   previously been disclosed.  Papaya's complaint in New York, just

14   as it does here, alleges that the 4FairPlay website, before the

15   interviews took place, was already stating that there was use of

16   bots by Papaya.  So Judge Cote ruled that that was not

17   actionable because there was nothing confidential, given it was

18   previously publicized.  And so while Papaya now argues that the

19   issues are different, the issues are the same.

20            And next, Papaya argues that -- it points to the maxim

21   that a plaintiff has as many claims as defendants.  But that

22   doesn't apply in a case like this, which allege a single

23   conspiracy between alleged co-conspirators based on the same

24   facts, and Judge Cote ruled twice that Papaya failed to state a

25   claim.  So Judge Cote has explained repeatedly in detail in

1    opinions and orders that Papaya has no claim based on the these

2    facts, and yet it's coming down here hoping for a different

3    ruling, hoping to upset Judge Cote's opinions and orders up

4    there.

5          That collateral attack should not be allowed for the

6    interests of justice, and therefore transfer is warranted so

7    this case can proceed in the Southern District of New York.

8          Now, the question was asked about whether the case

9    would proceed before Judge Cote or a different judge in the

10   Southern District of New York.  While I believe that the case

11   would be related before Judge Cote, Papaya, in its original

12   filings here in this court, noted the ongoing litigation and

13   noted that it was a related case, this case was related to the

14   one that is still ongoing before Judge Cote.  Judge Cote has

15   recognized herself in her opinions and orders that the claims

16   that she twice dismissed brought by Papaya are related to the

17   ongoing litigation against Papaya by Skillz, because at the

18   heart of both matters is Papaya's use of bots.  And so it is

19   likely that the case would be related for the ongoing litigation

20   before Judge Cote so it can proceed there.

21         Next, Papaya admitted just now in its oral argument

22   that it made a strategic choice not to join the defendants here.

23   And Papaya explained that it did so because if they had joined

24   defendants in connection with the proposed second amended

25   complaint, then defendants would have opposed that motion for

1    leave to amend, and so there would have been more parties

2    opposing that motion than just Skillz.  So Papaya made a

3    strategic choice there.

4         And it turns out that Judge Cote, even with just one

5    party, Skillz, opposing that motion, she said she was not going

6    to allow the amendment because it was futile, because Papaya's

7    proposed allegations and claims failed to state a claim, the

8    same allegations and the same issues that Papaya tries to

9    reassert here attempting to collaterally attack Judge Cote's

10   orders.

11        Next, Papaya focuses on the fact that Fair Play was

12   incorporated here in Virginia.  And while that is true,

13   Mr. Levin's declaration explains that was merely because

14   Virginia was the location of Fair Play's outside counsel.

15   Mr. Levin's declaration explains that Papaya never had any -- or

16   sorry, Fair Play never had any employees in Virginia, that it

17   hosted its website out of Texas, that none of its operations

18   were here.

19        Papaya also focuses on the purported interview scheme.

20   But none of those allegations relate to Virginia.  There's two

21   employees that were interviewed; neither were located in

22   Virginia.  Papaya certainly doesn't plead that.  Papaya doesn't

23   plead that any of the individuals that conducted the interviews

24   were located in Virginia.  It simply has no connection

25   whatsoever to Virginia.  In contrast, Papaya does plead that

1    Assemble the Agency and Ms. Newton were involved in interviews,

2    and of course they were both located in New York.

3            So unless Your Honor has any further questions, I'll

4    stop there.

5            THE COURT:  Thank you.  All right.  Well, I think I've

6    heard sufficient argument.

7            Do you want to be heard further?

8            MR. McINTOSH:  With the Court's indulgence --

9    apologies.  Could I make two points?

10           THE COURT:  All right.

11           MR. McINTOSH:  Thank you, Your Honor.  I appreciate it.

12   Two quick points.  First of all, my friend focuses on this

13   theory that defendants have concocted that the fabrication of

14   the letters was not all that significant because consumers might

15   have seen advertisements or content on the 4FairPlay website

16   that suggested complaints were being submitted about ^ bias.

17   That's obviously a factual question, nothing that's pled in the

18   amended complaint, and it strains credulity to believe that all

19   of the consumers thought that.  But anyway, that is a fact

20   question.

21           Another fact question is found in Mr. Levin's

22   declaration that they didn't submit any complaints to the

23   Virginia Attorney General.  Certainly the website promised all

24   consumers that complaints would be submitted to state officials

25   in their state, and the website showed that between 100 and 200

1    complaints had been submitted by Virginia residents.  Again,

2    that's a question of fact, and that underscores why this case

3    cries out for discovery, so that we can test these untested

4    assertions in defendants' submissions and gratuitous

5    declarations.

6            And finally, Your Honor --

7            THE COURT:  But those are issues you could explore

8    whether this case was litigated here or litigated in New York.

9    Correct?

10           MR. McINTOSH:  Yes, Your Honor.  I believe so.  We

11   think obviously this case should be litigated here, but this is

12   just underscoring that this case should move forward.

13           And finally, Your Honor, I just want to make the point,

14   my friend said on a number of occasions the issues in this case

15   are the same as the issues in the New York case.  But my friend

16   disregards that the legal standards are different.  And that is

17   what is dispositive here, going back to the Supreme Court's

18   decision in B&B Hardware.  It is right that to prevail on

19   Papaya's defamation claim or its false advertising claims on the

20   proposed second amended counterclaims, Papaya would have to show

21   that the content of the letters submitted to government

22   officials were false.

23           It need not do so here.  The claims here instead, under

24   Virginia's business conspiracy statute, are predicated on

25   obstruction of justice, the prohibition on making false

1    statements, and other analogous statutes.  Those statutes

2    require Papaya to allege, as it does here, and prove that the

3    letters themselves were fabricated.

4         And defendants have admitted that the letters

5    themselves were falsified, fabricated, manipulated.  That is all

6    that Papaya has to prove here.  Whether the contents of those

7    letters were true or false has no bearing on the claims.

8         Thank you, Your Honor.

9         THE COURT:  Thank you.  This matter comes before the

10   Court on a variety of motions filed by two sets of defendants.

11   Defendants Fair Play For Mobile Games, Josh Levin,

12   Square Strategies, LLC, Mavan Group, Inc., and Valor Public

13   Strategies filed a motion to dismiss for failure to state a

14   claim, that's docket entry 48; a motion to dismiss pursuant to

15   12(b)(7), that's docket entry 49; and a motion to transfer or

16   stay, and that is docket entry 50, on which I've just heard

17   argument, as well as the motion for judicial notice, which I

18   have granted.

19        Defendants Assemble the Agency, LLC and Lacie Newton

20   filed a motion to dismiss, or in the alternative to strike,

21   transfer, or stay the litigation.  That's docket entry 52; and

22   the motion for judicial notice, ECF -- or docket entry 55.

23        Assemble, the defendants -- the Assemble defendants

24   have also filed a motion for sanctions, which is docket entry

25   83, another motion for judicial notice, and a third motion for

1    judicial notice supports their reply brief.  And as I said,

2    those motions for taking judicial notice have been granted.

3         The Court has reviewed the voluminous and often

4    repetitive pleadings and listened carefully to the arguments of

5    counsel.  This case has a long and somewhat tortured history of

6    unnecessary and duplicative litigation in the Southern District

7    of New York, Virginia state court, and the Eastern District of

8    Virginia.  After considering all of the motions filed, the Court

9    will grant the motions to transfer the case to the

10   Southern District of New York, which is the most appropriate

11   venue for adjudicating these claims to the extent there's any

12   avenue for them to move forward, and that is a decision to be

13   left to the Court in the Southern District of New York.

14        The Court must make two inquiries when considering a

15   motion to transfer under 1404:  Whether the claims might have

16   been brought in a transferee forum and whether the interests of

17   justice and the convenience of the parties and witnesses justify

18   transfer to that forum.  Here, there's no question that this

19   action could have been brought in New York, not only if the

20   defendants consented to jurisdiction, but Papaya has conceded

21   that defendants Assemble and Newton are at home in New York, and

22   that the remaining defendants are subject to jurisdiction as

23   purported co-conspirators.

24        Next, to determine whether the interests of justice and

25   the convenience of the parties and witnesses justify transfer,

1    the District Court must consider the weight according to the

2    plaintiff's choice of venue, the witness convenience and access,

3    the convenience of the parties, and the interests of justice.

4    The party seeking transfer bears the burden of establishing that

5    the balance of the ^  Iqbal factors favors transfer.  Here, the

6    balance of the four factors favors transfer to the Southern

7    District of New York.

8            First, plaintiffs' choice of forum carries little

9    weight because this matter has weak ties to Virginia.  Although

10    it is true that Fair Play was incorporated here, the cause of

11    action bears little or no relation to that forum.  So the

12    plaintiff's chosen venue is not entitled to substantial weight.

13            Second and third, the convenience of both the witnesses

14    and the parties justifies transfer because the evidence has

15    already been produced in the New York action, and both Papaya

16    and Skillz are already parties to that suit.  New York is not

17    only convenient for the parties, but there were more than seven

18    times as many consumer complaints that originated from New York

19    than from Virginia.

20            Fourth and finally, transfer would undoubtedly serve

21    the interests of justice, especially here, where Papaya has

22    blatantly attempted to get a second bite at the apple by

23    pursuing different but clearly related defendants in a different

24    forum after Judge Cote conclusively rejected Papaya's

25    counterclaim and motion for leave to file a second amended

1    counterclaim on virtually identical claims.  The Court will not

2    waste its resources in permitting those issues to be relitigated

3    in this district under these circumstances.

4              Accordingly, the motions to transfer are granted, and

5    this matter will be sent to the Southern District of New York.

6    In light of the transfer, there is no need for the Court to

7    address the remaining motions, and that will have to be

8    addressed, to the extent it's appropriate, by the court in the

9    Southern District of New York.

10             Are there any other issues I need to address with

11   regard to this matter in light of the Court's ruling, on behalf

12   of the defendants?

13             MR. McCRARY:  No, Your Honor.

14             THE COURT:  Thank you.  On behalf of the Assemble

15   defendants?

16             MS. GLUCK:  No, Your Honor.

17             THE COURT:  On behalf of the plaintiff?

18             MR. McINTOSH:  No, Your Honor.  Thank you.

19             THE COURT:  Thank you.  This matter is then resolved.

20   Court will be in recess.

21

22

23

24

25